679 A.2d 1275

**MacKINTOSH–HEMPHILL INTERNATIONAL, INC., a Corporation and Mackintosh–Hemphill Manufacturing Co., a Corporation, through Lawrence N. Ravick, Bankruptcy Trustee, Appellants,**

**v.**

**GULF & WESTERN, INC., Gulf & Western Industries, Inc., Gulf Western Manufacturing Co., and Wickes Manufacturing Company, Appellees.**

Superior Court of Pennsylvania.

Argued April 9, 1996.

Filed June 12, 1996.

Reargument Denied Aug. 23, 1996.

386

388

Louis M. Tarasi, Jr., Pittsburgh, for appellants.

Michael Cardozo, New York City, for appellees.

Before DEL SOLE, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge.

This is an appeal from the judgment of the Court of Common Pleas of Allegheny County dated November 8, 1995, denying appellants' petition to open the judgment of non pros entered in favor of appellees, Gulf & Western, Inc. (Gulf & Western) and Wickes Manufacturing Company (Wickes), for a lack of docket activity. Herein, appellants, MacKintosh–Hemphill International, Inc. (Mack–Hemp) and Lawrence N. Ravick, Bankruptcy Trustee, contend that the lower court erred in failing to open the judgment of non pros because 1) they had a compelling reason for their five-year delay in prosecution of this case, 2) appellees were not prejudiced by

the delay, 3) appellees waived their right to assert non pros, 4) the "law of the case doctrine" was violated, 5) they devoted significant resources in preparing this case for trial such that it was inequitable for the lower court to grant non pros in favor of appellees, and 6) the lower court's retroactive application of *Penn Piping, Inc. v. Insurance Company of North America*, 529 Pa. 350, 603 A.2d 1006 (1992), to this case was unconstitutional. We affirm.

The rather lengthy factual and procedural history of this case is as follows: This case stems from appellant Mack–Hemp's purchase of the assets of a steel manufacturing division from appellees in 1983. When the manufacturing division was sold to Mack–Hemp, the employees' retirement medical benefits were vested. Mack–Hemp alleges that this fact was not disclosed to them by appellees.

In 1987, after the collective bargaining agreement which was in effect when Mack–Hemp purchased the manufacturing division expired, Mack–Hemp attempted to terminate the employees' retirement medical benefits. On March 22, 1987, the retirees commenced a putative class action (the *Wernert Action*) in the United States District Court for the Western District of Pennsylvania against both Mack–Hemp and Gulf & Western seeking restoration of their group health insurance, or damages for the cancellation of their insurance benefits contrary to the collective bargaining agreement. Gulf & Western settled the *Wernert Action* as to themselves by agreeing to share the cost of the health insurance with employees who retired before the acquisition. The *Wernert Action* was stayed as to Mack–Hemp because it filed for bankruptcy in July 1987. Thereafter, Lawrence N. Ravick was appointed as Mack–Hemp's bankruptcy trustee.[1]

On May 5, 1988, the bankruptcy court granted Mr. Ravick's application to retain Louis M. Tarasi, Jr., Esq. as special counsel to pursue Mack–Hemp's claims against appellees. On May 11, 1988, the writ of summons was filed in this case. The

1. After Mr. Ravick's death in 1993, Carlota Bohm was appointed successor bankruptcy trustee.

docket reflects that no further action was taken until November 29, 1993, at which time appellants filed a complaint alleging that they had been defrauded in 1983 by appellees' alleged failure to disclose that the retirees' medical benefits were vested.[2]

On December 17, 1993, appellees removed the case to The United States District Court for the Western District of Pennsylvania.[3] On December 27, 1993, appellees filed an answer to appellants' complaint, alleging that appellants' delay in prosecution constituted laches and barred their recovery. By court order dated January 21, 1994, the federal district court referred the action to the United States Bankruptcy Court for the Western District of Pennsylvania. After concluding that this case should be heard in the federal district court and not in the bankruptcy court, the reference to the Bankruptcy Court was withdrawn on June 1, 1994. On June 24, 1994, after the reference to the Bankruptcy Court was withdrawn, appellees filed in the federal district court a motion to dismiss alleging that appellants' delay in the action barred their recovery. On August 31, 1994, the federal district court ordered the action to be remanded to the Court of Common Pleas of Allegheny County. The federal district court declined to rule on appellees' motion to dismiss.

On October 3, 1994, shortly after the case was remanded to the court of common pleas, appellees filed an amended answer and moved for judgment on the pleadings. In both documents, appellees contended that appellants' delay in prosecuting this case barred them from recovery. On November 14, 1994, appellees filed a supplemental memorandum of law in

2. It should be noted that in addition to being sued by Mack–Hemp, appellees were also sued personally by John Wittekamp, the sole shareholder and president of Mack–Hemp, in a separate action based on the same claims as those in this case. In July 1992, following extensive discovery, the Wittekamp action was tried for eleven days before a jury. This action resulted in a verdict in favor of appellees, which was later affirmed on appeal at *Wittekamp v. Gulf & Western, Inc.*, 991 F.2d 1137 (3rd Cir.), *cert. denied*, 510 U.S. 917, 114 S.Ct. 309, 126 L.Ed.2d 256 (1993).

3. During the time period of November 29, 1993, and December 17, 1993, appellees did not initiate any discovery.

support of their motion for judgment on the pleadings, again asserting that appellants' delay in prosecution barred them from recovery. On February 16, 1995, the court of common pleas denied appellants' motion for judgment on the pleadings, but granted them leave to file a petition for entry of a judgment of non pros.

On February 24, 1995, appellees filed a petition for entry of a judgment of non pros. Following oral argument, by order dated May 9, 1995, the lower court issued an order to show cause why a judgment of non pros should not be issued. The lower court then directed that discovery was to be conducted concerning the question of whether appellants had devoted significant resources in preparing the case for trial during the fifteen months between the filing of the complaint in November 1993 and the filing of the non pros petition in February 1995. Pursuant to the lower court's order, the parties engaged in limited discovery for the sole purpose of determining whether appellants had devoted significant resources in preparing the case for trial.

On August 30, 1995, the lower court issued an order granting appellees' petition for a judgment of non pros. On September 8, 1995, appellants filed a petition to open the judgment of non pros. This petition was denied on November 8, 1995, thereby rendering the order of non pros final. This appeal followed.

 At the outset of our analysis, we note that our standard of review in regard to a request to open a judgment of non pros is well-established.

> A request to open a judgment of non pros is by way of grace and not of right and its grant or refusal is peculiarly a matter for the [lower] court's discretion. We are loathe to reverse the exercise of the court's equitable powers unless an abuse of discretion is clearly evident. Before a petition to open a judgment of non pros may be granted, the moving party must 1) promptly file a petition to open, 2) present a reasonable explanation or excuse for the default or delay

that precipitated the non pros, and 3) establish that there are sufficient facts to support a cause of action.

*Dorich v. DiBacco,* 440 Pa.Super. 581, 656 A.2d 522, 524 (1995) (citations omitted).

In this case, appellants filed their petition seeking to open the judgment of non pros in a timely fashion. It is also undisputed that there are sufficient facts to support a cause of action in this case. However, the lower court determined that appellants failed to provide a reasonable explanation or excuse for the delay that precipitated the non pros in this case, and, therefore, refused to open the judgment of non pros entered in favor of appellees.

▆▆▆ Appellants' first and second allegations are that the lower court erred in denying their petition because they had justifiable reasons for any delay on their part, and appellees did not establish that they were prejudiced by the delay. We disagree.

[P]laintiff[s] ha[ve] an affirmative duty to prosecute [their] action within a reasonable time. Before a court may dismiss an action for lack of docket activity, it must be demonstrated that (1) a party has shown a lack of due diligence by failing to proceed with reasonable promptitude; (2) there is no compelling reason for the delay; and, (3) the delay has caused prejudice to the adverse party, which will be presumed in cases involving a delay for a period of two years or longer. In cases where the delay was *caused* by bankruptcy, liquidation or other operation of law, or where the case was delayed awaiting significant developments in the law, there will be an automatic determination that a compelling reason for the delay has occurred. Other compelling reasons may be determined on a case-by-case basis.

*Dorich,* 656 A.2d at 524 (citing *Penn Piping, supra* ) (emphasis added).

▆▆ Here, more than five years passed from the time appellants instituted this lawsuit by writ of summons on May 11, 1988, and the filing of the complaint on November 29, 1993. The docket reflects that there was no activity during this five

year period. Therefore, we find that appellants demonstrated a lack of due diligence in failing to proceed with reasonable promptitude. In addition, because this delay exceeded two years, we will presume that the delay caused prejudice to appellees. *Penn Piping, supra; Dorich, supra.*

■ Nevertheless, appellants maintain that the delay was justified in this case. Specifically, appellants maintain that the delay in this case was justified because they were in bankruptcy during the time of the delay. We find appellants' allegation to be meritless.

We agree with appellants' assertion that in *Penn Piping* and *Dorich* it was held that when the delay in docket activity is *caused* by bankruptcy it is a per se compelling reason for the delay. *Penn Piping,* 603 A.2d at 1009 n. 2; *Dorich,* 656 A.2d at 524. However, we disagree with appellants' assertion that the fact that they were in bankruptcy during the time at issue *caused* the delay in this case. It is not enough for appellants to assert that they were in bankruptcy during the time at issue. Rather, appellants must demonstrate how being in bankruptcy *caused* the delay in this case. This they have failed to do.

The record reveals that appellants were placed in bankruptcy in July 1987. Ten months later, Attorney Tarasi, on application of the bankruptcy trustee and with the approval of the bankruptcy court, was appointed special counsel to prosecute this action. Six days after Attorney Tarasi's appointment as special counsel, the summons in this case was served. No further action was taken by Attorney Tarasi until approximately five years later when a complaint was filed on November 29, 1993.

From the record, it is clear that appellants' lawsuit was instituted in the Pennsylvania courts with the permission of the trustee in bankruptcy and with the approval of the bankruptcy court. In addition, from the record, it is clear that appellants were in bankruptcy prior to the serving of the summons in this case, and that the bankruptcy court did not prevent them from proceeding with this lawsuit. However,

appellants argue that this Court must still conclude that bankruptcy was the *cause* of the delay in this case because Lawrence N. Ravick, Bankruptcy Trustee, decided not to proceed with this suit in order to preserve the resources of the bankrupt's estate. We disagree.

"It has been held many times that ... financial considerations do not present compelling reasons for delay." *County of Erie v. Peerless Heater Company,* —— Pa.Commw.Ct. ——, 660 A.2d 238, 240 (1995). *See Penn Piping, supra* (plaintiff has duty to proceed regardless of fiscal constraints). The compelling reasons for delay as described by our supreme court all involve situations where events beyond the plaintiffs' control impeded progress. *County of Erie, supra; Dorich, supra.* Here, the Bankruptcy Trustee, who "stepped into appellant's shoes," made a decision to follow a particular course of action which resulted in a delay in the resolution of the litigation. Although the depletion of the bankrupt's estate was beyond the appellants' control, the decision not to pursue the case expeditiously was a strategic decision for which the appellants' must take responsibility. *See County of Erie, supra.*

Moreover, we note that appellants' assertion that preserving estate funds was a compelling reason for their delay is vitiated by the fact that trial counsel agreed to prosecute this case based on a forty percent (40%) contingency fee and that Wittekamp, consistent with the bankruptcy court's order authorizing commencement of this suit, agreed to advance all costs for this suit. Therefore, even if this case had been prosecuted diligently, we fail to see how the assets of the bankrupt's estate would have been affected. Accordingly, we find that the lower court did not abuse its discretion in concluding that appellants failed to provide a compelling reason for their five year delay in pursuing their claim. *County of Erie,* 660 A.2d at 241.

■■■ Appellants next argue that the lower court erred in determining that appellees were prejudiced by the delay in this case. Specifically, appellants argue that appellees have

failed to demonstrate any actual prejudice from the delay. We find that pursuant to our supreme court's holding in *Penn Piping* appellees were not required to demonstrate actual prejudice for the entry of a judgment of non pros.

> [Our supreme court has held] that in cases involving a delay for a period of two years or more, the delay will be presumed prejudicial for purposes of any proceeding to dismiss for lack of activity on the docket. The court in *Penn Piping* ... adopt[ed] a per se rule in which delay in excess of two years establishes a prejudice sufficient to satisfy the ... [prejudice] prong of the non pros test. We note, however, that in its actual application of this part of the test, the court took as the measure of the 'delay' not the period of inactivity on the case docket, but rather the period of *unexplained* docket inactivity.

*Pennridge Electric v. Souderton School,* 419 Pa.Super. 201, 615 A.2d 95, 100 (1992) (citing *Penn Piping, supra* ) (emphasis in original). Moreover, in *Penn Piping,* our supreme court listed a number of reasons for establishing the two year presumption, thereby not requiring a specific showing of prejudice. For example, the court noted that, after a lengthy lapse in time, defendants may have a difficult time defending themselves, witnesses may be unavailable and defendants may be subjected to needless anxiety. *Mudd v. Nosker Lumber, Inc.,* 443 Pa.Super. 483, 662 A.2d 660, 663 (1995).

Here, appellants have offered no compelling reason that would warrant our reducing by any amount the period of inactivity on the docket. The period of docket inactivity in this case was over *five* years, and prejudice must be presumed. Thus, the prejudice prong of the non pros test is met. Accordingly, assuming *arguendo* that appellees failed to demonstrate actual prejudice, it would not be a bar to the entry of a judgment of non pros in this case.[4] *Pine Township Water*

4. We note that, although they were not required to do so, appellees have demonstrated that they were actually prejudiced by appellants' five year period of docket inactivity. Appellees have demonstrated that because of the lengthy delay witnesses' memories have faded and many witnesses would be unavailable if a trial were held. This constitutes actual prejudice. *Shrum v. Pennsylvania Electric Company,* 440 Pa.

*Company v. Felmont Oil*, 425 Pa.Super. 473, 625 A.2d 703 (1993) (because there was no docket activity for period exceeding two years, prejudice was presumed and need not be averred or proven by the movant); *Pennridge Electric, supra* (holding that where the period of docket inactivity was four years and no compelling reason was provided for the inactivity, prejudice was presumed).

■ However, appellants argue that pursuant to this Court's rather recent holding in *Mudd v. Nosker Lumber, Inc.*, 443 Pa.Super. 483, 662 A.2d 660 (1995), the presumption of prejudice arising from the delay in pursuit of this case was rebutted by other circumstances. Specifically, appellants argue that appellees should not have been granted non pros because they contributed to the delay in this case. Appellants argue that appellees delayed this case when they removed it to federal court. Appellants also argue that appellees came before the court with unclean hands because they misrepresented the status of the retirees' medical benefits at the time of the transaction in 1983. We find appellants' arguments to be meritless.

Unlike in *Mudd*, the record reveals that appellees' conduct did not contribute to appellants' five year delay from the serving of the summons to the filing of the complaint. Appellants' argument that appellees contributed to the delay in this case by removing it to federal court overlooks the fact that the delay complained of happened prior to the removal of the case to federal court. Accordingly, this removal did not contribute to the five year docket inactivity from the time the summons was served and the complaint was filed.

■ As for appellants' contention that appellees came before the court with unclean hands, we disagree. The record indicates that there is no wrongdoing on behalf of appellees in

383, 269 A.2d 502 (1970) (entry of judgment of *non pros* upheld where defendants prejudiced by delay resulting in unavailability of witnesses); *American Bank & Trust Company v. Ritter*, 274 Pa.Super. 285, 418 A.2d 408 (1980) (entry of judgment of *non pros* upheld on ground that memories of all available witnesses must necessarily be dimmed and perhaps extinct).

delaying this suit. Appellants' argument that appellees came before the court with unclean hands is based on the underlying claim in this action, that is, that during Mack–Hemp's acquisition of the steel manufacturing division from appellees in 1983, appellees acted in a "habitual, outrageous, inequitable" manner. This goes to the merits of the underlying claim and will not support a finding of unclean hands in regard to the delay in this case. Accordingly, appellants have failed to rebut the presumption of prejudice.

■■■ Appellants' next contention is that appellees waived their right to assert non pros. Specifically, appellants argue that appellees waived their right to non pros by removing the case to federal court, by filing an answer addressing the merits of the case and by waiting too long to file a motion for non pros. Although appellant is correct in asserting that a party seeking non pros may waive the right thereto if their conduct indicates a willingness to try the case on its merits, we find that no such conduct occurred here. *Dorich, supra.*

■■■ Appellants first allege that appellees waived their right to non pros by removing the action to federal court. The record reveals that appellees removed the case to federal court because they sought to have the action dismissed by the same court before which the *Wittekamp* case was litigated. Cognizant of the fact that the federal court was already familiar with the parties and the issues in this proceeding, appellees believed that the federal court would dismiss the suit in a more timely manner than a state court which was not familiar with the parties and issues at hand. We find that this action cannot be construed as a willingness to try the case on its merits. Moreover, it should be noted that after the action was removed to federal court, in every substantive motion and pleading filed thereafter in federal court, appellees asserted that the action should be dismissed because of the five-year delay. We find that appellees' removal of the action to federal court pertained to their desire to have the case dismissed for improper delay and not a desire to dispense with the case on the merits.

Nor are we persuaded that appellees' filing of an answer in this case was an indication of a willingness to try the case on its merits. Appellees' filing of an answer, as they were required to do under the Pennsylvania Rules of Civil Procedure, cannot be interpreted as steps in preparation of trial on the merits. *See Dorich, supra* (defendant's act of responding to plaintiff's discovery request, as he was required to do under Pennsylvania Rules of Civil Procedure, was not inconsistent with his request for a non pros); *Blackburn v. Sharlock,* 433 Pa.Super. 581, 641 A.2d 612 (1994), *alloc. denied,* 539 Pa. 673, 652 A.2d 1319 (1994) (filing of answer by defendant was not a willingness to try the case on its merits); *Gates v. Servicemaster Com. Service,* 428 Pa.Super. 568, 631 A.2d 677 (1993) (defendant's act of filing answer and new matter did not waive right to non pros). The record indicates that every substantive action taken by appellees following the service of the complaint was predicated on the defense that appellants were barred from recovery because of the five year delay. Therefore, the parties knew that dismissal based on the five year delay was being actively sought. However, appellants assert that although appellees had indicated that they wanted dismissal based on the five year delay, they waited too long to request a judgment of non pros. We disagree.

The record reveals that in appellees' initial answer, which was filed in federal court on December 27, 1993, they raised the affirmative defense of laches, alleging that appellants' claim was barred because of the five year delay. Appellees also filed in the federal court a motion to dismiss, again alleging that appellants' claim was barred because of the five year delay. After the case was remanded to the Court of Common Pleas of Allegheny County on August 31, 1994, appellees filed an amended answer and new matter on October 3, 1994, thereby raising the defense of laches because of appellants' five year delay in asserting their claims. On the same date, appellees filed a motion for judgment on the pleadings which sought dismissal on various grounds, including laches because of the five year delay. On February 16,

1995, the lower court denied appellees' motion for judgment on the pleadings, and indicated that a request for dismissal for docket inactivity needed to be raised by a petition for the entry of a judgment of non pros. Eight days later, appellees filed a petition for the entry of a judgment of non pros, which was granted by the lower court.

While appellees did not immediately file a petition for non pros, it is clear that they consistently sought dismissal because of the five year delay in appellants' pursuit of their claim. This case is similar to *Dorich v. DiBacco*, 440 Pa.Super. 581, 656 A.2d 522 (1995), where, on June 24, 1992, the defendant filed a motion for summary judgment for failure to file an expert's report following docket inactivity for approximately three years. After the plaintiff filed a preliminary expert's report, defendant filed another motion for summary judgment on November 24, 1992. After additional docket activity, on March 12, 1993, the defendant filed a motion for non pros based on the plaintiff's failure to proceed.

On appeal, in *Dorich*, we held that although defendant had not immediately filed a petition for a judgment of non pros, he had not waived his claim to non pros because the parties knew that dismissal was being actively sought. Such is the case here. We also note that appellees' requests for dismissal based on the five year delay are consistent with their petition for judgment of non pros based on docket inactivity. Therefore, we cannot find that the lower court abused its discretion in concluding that appellees had not waived their right to seek a judgment of non pros.

Appellants' next contention is that the "law of the case doctrine" applies in this case to the question of whether they expended substantial expense in preparation of this case such that it was inequitable for a judgment of non pros to be entered in favor of appellees. Specifically, appellants allege that the lower court violated this doctrine by reopening this question in its opinion dated August 30, 1995. We disagree.

The "law of the case doctrine" "refers to a family of rules which embody the concept that a court involved in the

later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1328 (1995). Here, the record reveals that in the lower court's opinion dated May 9, 1995, the court provided appellants with an opportunity to prove that they had devoted significant resources in preparing this case for trial such that dismissal on the grounds of non pros would be inequitable. In the lower court's opinion dated August 30, 1995, the court found that appellants had not expended substantial expenses in preparation of this case for trial, and, therefore, determined that it would not be inequitable to enter non pros in favor of appellees. Because the lower court's opinion dated May 9, 1995, expressly left open the question concerning the extent of appellants' trial preparation, the lower court's resolution of this question in its opinion dated August 30, 1995, did not violate the "law of the case doctrine."

 Appellants next assertion is that they devoted significant resources in preparing this case for trial, and, therefore, it was inequitable for the lower court to grant a judgment of non pros in favor of appellees.[5]

As discussed previously, in issuing a rule to show cause as to why non pros should not be entered, Judge Wettick gave appellants an opportunity to prove that they had devoted significant resources in preparing this case for trial such that dismissal on the grounds of non pros would be inequitable. After reviewing the discovery devoted to this issue, Judge Wettick concluded that appellants had not expended substantial resources in preparing this case for trial. In particular, in the lower court's order dated August 30, 1995, Judge Wettick stated the following:

> For a case involving claims of millions of dollars, there have been minimal resources expended in the preparation of the

**5.** We note with disapproval that appellants have failed to cite any authority supporting this argument. *Commonwealth v. Long*, 367 Pa.Super. 190, 532 A.2d 853 (1987), *appeal denied*, 518 Pa. 617, 541 A.2d 744 (1988).

case following the filing of the complaint. There has been no additional discovery. There has been some preliminary work by Mr. Wittekamp, who would apparently be a damage witness. Plaintiffs' attorneys have been involved in reviewing prior proceedings, gaining information regarding the preliminary work of Mr. Wittekamp and providing direction to him. This has been the type of preparation that would be anticipated in the early stages of litigation in which defendants have filed pleadings raising their defenses together with a motion for judgment based on these defenses. It is plaintiffs' position that most of the preparation for the case occurred in the prior litigation.

Lower Court Opinion 8/30/1995 pp. 11–12. The essence of appellants' argument is that these findings of fact are not supported by the record and are clearly erroneous. *See In re Park Drive Manor*, 380 Pa. 134, 110 A.2d 392 (1955) (holding that the lower court is the fact-finding body and that its findings of fact will not be set aside on appellate review unless they are clearly erroneous). We find that the lower court's findings of fact are not clearly erroneous, and that the lower court did not abuse its discretion in determining that appellants had not expended substantial expense in preparation of this case such that it would be inequitable for a judgment of non pros to be entered in favor of appellees.

 Appellants' final contention is that the lower court's application of *Penn Piping* to this case was unconstitutional. Specifically, appellants argue that the lower court was not permitted to apply the holdings of *Penn Piping* to this case in light of the fact that this case was pending at the time the *Penn Piping* decision was made. Appellants also argue that the lower court erred in its actual application of the holdings in *Penn Piping* to this case. We find appellants' contentions to be meritless.

The question of whether a state court decision announcing a new rule is to be applied retroactively or prospectively is squarely within the province of the state courts. The Federal Constitution neither requires nor prohibits retroactive or prospective application of a new decision. Likewise

the Pennsylvania Constitution neither mandates nor forbids either application.... The general rule followed in Pennsylvania is that we apply the law in effect at the time of the appellate decision. This principle applies with equal force to both civil and criminal proceedings.... Retrospective application is a matter of judicial discretion which must be exercised on a case by case basis.

*Blackwell v. Com. State Ethics Com'n,* 527 Pa. 172, 589 A.2d 1094, 1099 (1991) (citations omitted).

In *Blackburn v. Sharlock,* 433 Pa.Super. 581, 641 A.2d 612 (1994), *alloc. denied,* 539 Pa. 673, 652 A.2d 1319 (1994), we specifically held that our supreme court's holding in *Penn Piping* applied to the case in which it was announced and that it was not limited to prospective application. We further held in *Blackburn* that the lower court was correct in applying *Penn Piping* to the case at issue (*Blackburn*) which was pending when *Penn Piping* was decided. Accordingly, we find that it was not unconstitutional for the lower court to apply *Penn Piping* to this case which was also pending at the time *Penn Piping* was decided by our supreme court.[6]

For all of the foregoing reasons, the lower court's judgment denying appellants' petition to open the judgment of non pros entered in favor of appellees is affirmed.

Affirmed.

**6.** In light of our previous discussion concerning the lower court's application of *Penn Piping* to this case, we need not address appellants' contention that the lower court erred in its actual application of the holdings in *Penn Piping* to this case.