**Nancy DELOATCH, Appellant,**

v.

**Bernard BECKER, Appellee.**

Superior Court of Pennsylvania.

Argued June 25, 1997.
Filed July 30, 1997.

---

Jane B. Marton, Philadelphia, for appellant.

William H. Pugh, IV, Norristown, for appellee.

Before McEWEN, President Judge, and POPOVICH and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

On August 13, 1992, Nancy Deloatch, appellant herein, commenced the instant action by filing a writ of summons in the Court of Common Pleas of Montgomery County. Following a two-year period in which the docket was devoid of activity, the Montgomery County Prothonotary mailed termination notices to the parties. In response, Deloatch

filed a Certificate of Active Status in which she attested that the parties were engaged in ongoing negotiations in an attempt to settle the suit.

Thereafter on October 21, 1994, Deloatch filed a complaint wherein she alleged that while employed as a maid for Bernard Becker, Mr. Becker's Akita, Hondo Bear, attacked her, causing severe injuries. Specifically, Deloatch claimed that she and her coworker asked Becker to restrain Hondo Bear while the maids cleaned the house but that Becker failed to adequately ensure that the dog was confined. As a result, Deloatch claimed, the dog lunged at her, scratched and bit her and caused severe, permanent injuries.

On November 17, 1994, Becker filed an answer in which he admitted to ownership of Hondo Bear but denied the factual averments in the complaint. On that same day, Becker filed a petition for judgment of non pros in which he stated that Deloatch's failure to diligently pursue her claim for greater than two years was conclusively prejudicial. Deloatch then filed a response to Becker's petition, in which she admitted that the docket was inactive, yet claimed that ongoing discovery and settlement negotiations had generated a plethora of undocketed activity and that the non pros sanction was, therefore, unwarranted. Neither party, however, praecipied the court for argument on the petition.

For the next fifteen months, the docket reflects ongoing activity, some of which relates to Becker's non pros petition and some of which reflects unrelated pre-trial preparations. On February 9, 1996, Becker filed a praecipe with the trial court requesting that the court hear argument relative to the merits of the November, 1994, non pros petition. Following oral argument thereon, Becker's petition was granted by order of court dated July 31, 1996.

On August 21, 1996, Deloatch filed a petition to open and/or set aside the judgment of non pros. Therein, Deloatch claimed, inter alia, that Becker had affirmatively indicated a willingness to dispense with the non pros petition and to try the case on its merits. As a result, Deloatch argued, Becker had waived his right to the equitable non pros remedy. The parties then submitted briefs and, on December 23, 1996, following argument, Deloatch's petition was denied. This appeal follows.

Mindful that the decision to open and/or strike a judgment of non pros is by grace of court and not of right, this Court will not disturb the Order of the trial court absent a finding of an abuse of discretion. See, e.g., Pine Township Water Co. v. Felmont Oil, 425 Pa.Super. 473, 476–78, 625 A.2d 703, 705 (1993); Abraham Zion Corp. v. After Six, Inc., 414 Pa.Super. 611, 614–16, 607 A.2d 1105, 1107 (1992). Further, we note that the non pros doctrine is founded upon the equitable principle of laches and may properly be entered "when a party to a proceeding has shown a want of due diligence in failing to proceed with reasonable promptitude, and there is no compelling reason for the delay, and the delay has caused some prejudice to the adverse party." Zion, 414 Pa.Super. at 615, 607 A.2d at 1107 (citations omitted).

In order to prove entitlement to relief from a non pros judgment, the burden is upon the moving party to demonstrate that: (1) a petition to open and/or strike the judgment was promptly filed; (2) a reasonable explanation or legitimate excuse exists for the default or delay; and (3) there exist sufficient facts to support a cause of action. See, e.g., Petrone v. Whirlwind, Inc., 444 Pa.Super. 477, 480–81, 664 A.2d 172, 174 (1995); Pine Township, 425 Pa.Super. at 478–79, 625 A.2d at 706.

Instantly, the gravamen of Deloatch's argument is that, regardless of whether a non pros was warranted due to her prosecutorial delay, Becker has waived his right to assert entitlement to the remedy. That is, Deloatch argues, by conducting himself in a manner indicating a willingness to try the case on its merits and forgo seeking a non pros, Becker has forfeited his right to the remedy.[1]

---

1. In addition to this argument, Deloatch maintains that, because Becker did not file his petition within the time constraints provided in Pa.R.C.P. 1037, he is estopped from asserting a right to the

■ It is well-settled that a defendant cannot lose his or her right to seek a *non pros* merely by mounting a defense on the merits to the underlying action. *See, e.g., MacKintosh–Hemphill International, Inc. v. Gulf & Western Co.*, 451 Pa.Super. 385, 396–400, 679 A.2d 1275, 1281–82 (1996); *Blackburn v. Sharlock Repcheck*, 433 Pa.Super. 581, 584–85, 641 A.2d 612, 614 (1994). So long as the litigants are aware that the *non pros* petition is actively pending before the trial court, defendant is free to conform his or her conduct to our Rules of Civil Procedure by, *inter alia*, responding to interrogatories propounded by plaintiff or filing an answer and new matter.

■ What is not permitted is for defendant to act in a manner inconsistent with his or her request for a *non pros*. Such conduct, which indicates a willingness to try a case on its merits, will result in a waiver of the equitable *non pros* remedy. *Id.*

In the instant matter, Deloatch avers that, several months after filing his *non pros* petition, Becker agreed to pursue the case to culmination and forego the *non pros* petition. Additionally, Deloatch maintains, Becker's actions during the twenty-month lapse between the filing of the petition and argument thereon gave the reasonable impression that he was willing to either settle the case or, if no settlement could be reached, to try the case on its merits.

In support of her assertion that Becker agreed to abandon his *non pros* petition, Deloatch offers a series of letters exchanged between the parties in the summer of 1995, seven months after Becker filed his *non pros* petition and seven months before Becker praecipied for argument thereon. The first such letter, sent from Deloatch's counsel to Becker's counsel and dated June 26, 1995, reads, in pertinent part:

Pursuant to our conversation of June 20, 1995, this will confirm our agreement to pursue this matter to culmination, despite the outstanding Motion for Non Pros.

On July 20, 1995, Becker's attorney responded to the above correspondence as follows:

I am in receipt of your June 16, 1995 correspondence.

I disagree with your understanding of our telephone conversation of June 20, 1995.

The gist of our conversation was that we would put the Motion for Non Pros on the back burner pending your final review and initial demand.

A third letter was then sent from Deloatch's counsel to Becker's counsel. Dated July 27, 1995, the letter reads in part:

I am in receipt of your July 20, 1995 correspondence in response to my June 26 correspondence. I beg to differ with your recollection of our conversation of over a month ago on June 20, 1995. My understanding is as it was in my June 26, 1995 correspondence. Further, we agreed that we were both trying to move and expedite the case to completion as soon as practical.

With respect to the reasonable impression conveyed by the above correspondence, it is evident that, at a minimum, Becker agreed to temporarily forego the *non pros* petition and engage in settlement negotiations. It is unclear from the correspondence, however, how long Becker intended to "put the Motion for Non Pros on the back burner" and engage in negotiations in lieu of pursuing his petition.

A review of the record discloses that, until the point at which the trial court granted Becker's *non pros* petition, the parties were engaged in settlement negotiations and pretrial discovery.[2]  Importantly, just seven

remedy.  That is, Deloatch argues, because Becker did not file a praecipe for a rule to file a complaint with the Prothonotary, Becker could not file a *non pros* petition after Deloatch's complaint was filed.  Deloatch is mistaken.  Rule 1037 permits, but does not require, a defendant to compel a dilatory plaintiff to file a complaint.  The mandatory language in the Rule is directed at the Prothonotary, not the defendant.  As such, Deloatch's averment that "the defendant may seek a judgment of *non pros* only after he/she

first rules the plaintiff to file a complaint" is wholly without merit.  Deloatch's brief at 17.

2.  Examples of pre-trial activity generated by Becker after he filed the petition for *non pros* include: (1) on January 5, 1995, Becker sent Deloatch a notice of deposition relating to Deloatch's coworker, Virginia Savage, who witnessed the alleged accident; (2) on January 20, 1995, Becker deposed both Virginia Savage and Deloatch; (3) on February 13, 1995, Becker

weeks prior to oral argument relative to the *non pros* petition, Becker signed and forwarded a trial praecipe to the Montgomery County Prothonotary. The praecipe contains a certification, written in capital letters, just above the attorneys' signature line which reads:

> PLEASE SCHEDULE THE ABOVE CASE FOR TRIAL. LISTED BELOW ARE TRIAL COUNSEL AND WE CERTIFY THAT **ALL PRE-TRIAL MOTIONS HAVE BEEN DISPOSED OF** AND DISCOVERY IS COMPLETED.

Trial praecipe, R. at part 4, exhibit 16 (emphasis added).

■ After careful consideration we find that Becker's actions, whether intentional or not, indicated a willingness to try this case on its merits. This is not a situation in which defendant merely filed an answer to a complaint or responded to discovery requests initiated by plaintiff. Rather, Becker filed a *non pros* petition in November of 1994 and for the next twenty months actively participated in pre-trial preparations for this case. As stated, after the petition languished for over seven months, Becker agreed, at the very least, to put the petition "on the back burner." Then, nearly one year later, prior to argument on his motion, Becker signed a trial praecipe in which he certified that there were no outstanding motions to be heard and that the case was ready for trial. In sum, we belive that Becker's actions were not such that "the parties knew throughout the litigation that the *non pros* was being actively sought." *Blackburn*, 433 Pa.Super. at 584, 641 A.2d at 614.[3]

In determining whether to grant a *non pros*, a trial court must consider the equities of a case. We do not believe that a defendant who files a *non pros* petition, yet waits

twenty months before arguing its merits, during which time he actively engages in trial preparations and agrees to put the petition "on the back burner," is deserving of such an equitable remedy. Accordingly, we hold that the trial court abused its discretion in finding that Becker did not waive his right to assert his entitlement to a *non pros* and that the granting of such *non pros* was, therefore, improper.

Order reversed; case remanded; jurisdiction relinquished.

Concurring and dissenting statement by McEWEN, President Judge.

McEWEN, President Judge, concurring and dissenting.

One must be hesitant to depart the company of distinguished colleagues and to differ with so sound an expression as the majority opinion. Nonetheless, while I arrive at the reversal destination of the majority, I pursue another path to do so.

I would, like the majority, lift the judgment of *non pros*, but do so by reason of the equitable factors, as revealed by the reproduced record, extant at the time that defendant/ appellee filed the motion for *non pros*, namely,

> That plaintiff/appellant had proceeded in early 1993 to Alternate Dispute Resolution,

> That plaintiff/appellant had filed an active status certification within 15 days of the notice to terminate dated August 27, 1994, and

> That plaintiff/appellant filed her complaint approximately one month prior to the filing of the motion for *non pros*.

---

served a request for production of documents upon Deloatch; (4) on February 13, 1995, Becker served witness and expert witness interrogatories upon Deloatch; and, (5) on March 12, 1996, Becker requested that Deloatch submit to a second independent medical examination. See Memorandum in opposition to petition for *non pros*, and corresponding exhibits, at R.R. 170a-186a.

**3.** In support of his assertion that he never intended to abandon his *non pros* petition, Becker

cites to his July, 1995, letter wherein he stated that he would put the petition "on the back burner." Regardless of Becker's actual, subjective, intent, our caselaw directs that the equitable *non pros* remedy may be forfeited by actions indicating a willingness to try a case on its merits. Therefore, whether Becker subjectively intended to pursue his petition is of no moment; for the fact remains that his objective manifestations indicated a willingness to pursue the case to trial or settlement.

It is upon the basis of those factors that I would provide for the cause of this plaintiff to proceed to a trial.

Moreover, I am unwilling to fault and penalize defendant/appellee for refusing to declare a halt in the measures to move the case to a conclusion. Rather, it strikes me that the more purposeful course for the justice systems would be to encourage resolution of claims while preliminary applications are pending, and permit the parties to pursue the course which defendant/appellee here followed. A lurking motion for *non pros* would thereby serve as a factor in settlement negotiations instead of effecting a cessation in proceedings and impeding the course of the cause toward finality.