**Matchulat v. Powlus Construction Inc.**

C.P. of Monroe County, no. 7490 Civil 2000.

*Bruce S. Zero,* for plaintiffs.
*Frank A. Baker III,* for defendant Powlus Construction.
*P. Jeffrey Hill,* for defendant Roy W. Piper Construction.

WORTHINGTON, *J.,* March 19, 2004—On May 17, 1999, plaintiff Robert Matchulat was working on a scaffold at The Crossings Factory Stores in Tannersville, Pennsylvania when he fell 30 feet through scaffolding boards and was severely injured. Outletter Associates

owns and operates The Crossings Factory Stores.[1] Outletter hired defendant Roy W. Piper Construction to serve as the general contractor of a construction project at The Crossings Factory Store. At the time of his injuries, plaintiff was employed by a subcontractor hired by Piper, Keystone Steel Erectors Inc. Defendant Powlus Construction was also a subcontractor hired by Piper. Powlus owned the scaffold that collapsed, causing plaintiff's injuries.

On July 12, 2000, plaintiffs filed a complaint alleging negligence and loss of consortium in the Lackawanna County Court of Common Pleas. All defendants filed preliminary objections to the complaint in August 2000. In the preliminary objections, all defendants requested a change of venue to the Monroe County Court of Common Pleas. By order dated October 16, 2000, plaintiffs' case was transferred to Monroe County.

Powlus filed an answer and new matter on January 18, 2001. Piper filed an answer, new matter and cross-claim on February 14, 2001. Argument on Outletter's preliminary objections was held on March 13, 2001. Both plaintiffs and Outletter filed supporting briefs. Outletter's preliminary objections were dismissed by order and opinion dated April 9, 2001.

Piper filed a motion for summary judgment, supporting brief and exhibits on April 17, 2003. Outletter filed an answer to Piper's motion for summary judgment on May 15, 2003. Powlus filed an answer and memoran-

1. Pursuant to our opinion dated September 10, 2003, Outletter was granted summary judgment and is no longer a party to this matter.

dum of law in support of its opposition to Piper's motion for summary judgment on July 7, 2003. Plaintiffs never responded to Piper's motion for summary judgment. Piper's motion for summary judgment was denied by order and opinion dated September 10, 2003.

Outletter filed a motion for summary judgment, supporting brief and exhibits on June 5, 2003. Piper filed a response to Outletter's motion for summary judgment on June 20, 2003. Powlus filed an answer and brief in support of its opposition to Outletter's motion for summary judgment on July 7, 2003. Plaintiffs failed to respond to Outletter's motion for summary judgment. Outletter's motion for summary judgment was granted by order dated September 10, 2003.

Piper filed a second motion for summary judgment and supporting brief on December 15, 2003. Powlus filed an answer and brief in opposition to Piper's second motion for summary judgment on January 28, 2004. Plaintiffs failed to respond to Piper's second motion for summary judgment.

On February 2, 2004, we heard argument concerning Piper's second motion for summary judgment. The matter is now before us for disposition.

Summary judgment may be brought by any party as a matter of law whenever "there is no genuine issue of any material fact as to a necessary element of the cause of action . . . ." Pa.R.C.P. 1035.2(1). When rendering its decision, the court may consider pleadings, depositions, answers to interrogatories, admissions and supporting affidavits. Pa.R.C.P. 1035.1. The moving party bears the

burden of demonstrating that no genuine issue of fact exists and that he is entitled to judgment as a matter of law. *First Wisconsin Trust Co. v. Strausser,* 439 Pa. Super. 192, 198, 653 A.2d 688, 691 (1995). The court must view the record in the light most favorable to the non-moving party and all doubts concerning the existence of a genuine issue of fact must be resolved in that party's favor. *Dublin by Dublin v. Shuster,* 410 Pa. Super. 1, 598 A.2d 1296 (1991).

## PIPER'S SECOND MOTION FOR SUMMARY JUDGMENT

Piper argues that it is entitled to summary judgment because it is a statutory employer under the Workers' Compensation Act, and, as such, is immune from common-law actions by a subcontractor's employee injured in the course and scope of employment.

In Pennsylvania, the workmen's compensation law is the employee's exclusive remedy against an employer for injuries sustained in the course and scope of employment. 77 P.S. §1 et seq.; see also, *Lewis v. School District of Philadelphia,* 517 Pa. 461, 538 A.2d 862 (1988). This immunity from common-law tort liability has been extended to favor a "statutory employer." 77 P.S. §52; see also, *Ventura v. Skylark Motel Inc.,* 431 Pa. 459, 246 A.2d 353 (1968); *McDonald v. Levinson Steel Co.,* 302 Pa. 287, 153 A.2d 424 (1930); *Zizza v. Dresher Mechanical Contractors Inc.,* 358 Pa. Super. 600, 518 A.2d 302 (1986), *appeal denied,* 516 Pa. 643, 533 A.2d 714 (1987); *Colloi v. Philadelphia Electric Co.,* 332 Pa. Super. 284, 481 A.2d 616 (1984). A general contractor may be con-

sidered the statutory employer of a subcontractor's employee. *McDonald,* 302 Pa. at 293, 153 A.2d at 426.

Pennsylvania courts reject the idea that the statutory employer defense should be conferred on a general contractor automatically. *Stipanovich v. Westinghouse Electric Co.,* 210 Pa. Super. 98, 231 A.2d 894 (1967). To determine whether a contractor is a statutory employer and therefore entitled to immunity, it is first necessary to satisfy the five-part *McDonald* test. The five elements of the *McDonald* test are as follows:

"(1) An employer who is under contract with an owner of land or one in the position of an owner.

"(2) Premises occupied by or under the control of such employer.

"(3) A subcontract made by such employer.

"(4) Part of the employer's regular business entrusted to such subcontractor.

"(5) An employee of such subcontractor [is injured on the premises]." *McDonald,* 302 Pa. at 295, 153 A.2d at 426; *Emery v. Leavesly McCollum,* 725 A.2d 807 (Pa. Super. 1999); *McCarthy v. Dan LePore & Sons Co. Inc.,* 724 A.2d 938 (Pa. Super. 1998); *Lascio v. Belcher Roofing Corp.,* 704 A.2d 642 (Pa. Super. 1997).

In our opinion dated September 10, 2003, we found that Piper had satisfied elements one, three, four and five of the *McDonald* test. With respect to element two, we held that as of September 10, 2003, there was insufficient evidentiary support for a ruling in Piper's favor under the summary judgment standard. Accordingly, the

only issues to be resolved at this time are: (1) whether Piper can now meet the summary judgment standard as to element two of the *McDonald* test; and (2) whether Piper is precluded from raising the statutory employer defense in light of the order of September 10, 2003.

Courts read the language in prong two of the *McDonald* test in a strictly disjunctive manner. *Davis v. City of Philadelphia*, 153 Pa. Super. 645, 35 A.2d 77 (1943). Therefore, an employer will satisfy this element if he either is in control of the premises or occupies the premises. *Zizza*, 358 Pa. Super. 600, 518 A.2d 302. Actual control by a general contractor must be demonstrated to show that the general contractor is in control of the premises, for purposes of determining the existence of a statutory employer relationship under the Workers' Compensation Act; mere showing of right of control is insufficient. 77 P.S. §52; see also, *Leibensperger v. W.C.A.B. (Thomas H. Lewis Builders Inc.)*, 813 A.2d 28 (Pa. Commw. 2002).

Piper's first argument is that it meets element two of the *McDonald* test since it occupied the worksite. Piper begins by citing to an exhibit attached to the deposition of Duane Powlus. The exhibit that Piper cites is the transcript of a recorded statement by Duane Powlus. (See exhibit A to Piper's second motion for summary judgment.) In his recorded statement, which was recorded on May 17, 1999, Duane Powlus states that Piper's employee, Joe Gozikowski, was in charge of the job site, oversaw what the subcontractors were doing on a daily basis, interacted with the subcontractors on a daily basis and told the subcontractors if there was a problem. (Ex-

hibit A to Piper's second motion for summary judgment, ll. 80-115.) Duane Powlus also makes the following statement, "Yeah they were on the job site every day just like we are, so I mean they know what is going on and they see what is going on." (Exhibit A to Piper's second motion for summary judgment, ll. 96-98.) We have highlighted this last statement because it is an admission that Piper employees were present at the work site to the same extent as Powlus employees.

Piper cites additional statements pertaining to Joe Gozikowski's presence at the work site and his role on the project. In a recorded statement by Gene Powlus, also a deposition exhibit, Gene Powlus identifies Joe Gozikowski as the foreman at the work site and the person who oversaw Powlus' work progress. (See exhibit B to Piper's second motion for summary judgment, ll. 216-48.) John Bonacci, the president of subcontractor Keystone, testified that Joe Gozikowski was Piper's on-site project manager whom he talked to or dealt with concerning the project. (Deposition of John Bonacci, at p. 12, ll. 4-14.)

The affidavit of Stan Seiple, who was the architect for the project, is the most significant item that Piper cites to in support of its motion. (See exhibit D to Piper's second motion for summary judgment, affidavit of Stan Seiple.) In the affidavit, Stan Seiple attests to the fact that Joe Gozikowski was present at the job site during all phases of construction and that he was Piper's representative and superintendent for all work performed under the contract with the owner. (Exhibit D to Piper's second motion for summary judgment, affidavit of Stan

Seiple, at paragraph 5(b).) In fact, Stan Seiple made all of his communications to Piper through Joe Gozikowski. (Exhibit D to Piper's second motion for summary judgment, affidavit of Stan Seiple, at paragraph 5(b).) Stan Seiple also states that Piper occupied the work site until the project was complete. (Exhibit D to Piper's second motion for summary judgment, affidavit of Stan Seiple, at paragraph 5(o).) Powlus has raised several objections to the use of Stan Seiple's affidavit.

Powlus' first contention is that the affidavit fails to raise any new evidence. We disagree. In our order dated September 10, 2003, the main reason we denied Piper's motion for summary judgment was the lack of evidence concerning Piper's presence and/or role at the work site. At that time, it was unclear how often Piper employees were present at the work site. It was also unclear how Piper employees interacted with subcontractors. In its first motion for summary judgment, Piper merely relied on the fact that it was the general contractor, thus, Piper failed to supply any significant evidence concerning whether it occupied and/or controlled the work site. Because the information contained in the affidavit pertains to the degree of Piper's presence at the work site and the manner in which Piper employees interacted with the subcontractors, we find the affidavit raises new evidence. As such, this court finds the affidavit, as well as the other supporting documents of record, sufficient for us to determine whether Piper occupied and/or controlled the work site.

Powlus' second objection to the use of the affidavit is that Stan Seiple uses a legal term of art by stating that

Piper "occupied" the work site. According to Powlus, this assertion cannot be used in support of Piper's second motion for summary judgment. Assuming, arguendo, that the affidavit contains an impermissible legal conclusion, we nevertheless consider the statement harmless in light of the other statements in the affidavit. For instance, Stan Seiple states that Joe Gozikowski was present at the job site during all phases of construction. This statement, which contains no legal terms of art, clearly aids us in determining whether Piper occupied and/or controlled the work site.

Finally, Powlus contends that Stan Seiple's credibility is an issue of fact that should be left for the jury. Powlus cites *Nanty-Glo Boro. v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932), for the proposition that the entry of a direct verdict is foreclosed when issues of credibility leave a genuine issue of material fact. According to Powlus, when the movant can prevail only by the use of testimonial evidence, credibility creates a genuine issue of material fact for the jury. *Id.* at 238, 163 A. at 524. Powlus argues that credibility issues cloud the affidavit and, thus, the affidavit should not be relied upon as a basis for summary judgment. We disagree.

At the outset we note that *Nanty-Glo* is distinguishable from the present matter since it involved sworn testimony. After hearing the live testimony, which was unopposed, the trial court in *Nanty-Glo* directed a verdict for the plaintiff. The decision to direct a verdict in the plaintiff's favor was overturned because the unopposed testimony was the only means of establishing facts necessary for the plaintiff to recover. Because of this, the

court felt that the credibility of the witnesses should have been left for the jury. This matter is different since the affidavit is not the only means of establishing elements necessary for Piper to prevail on its motion. It is common, in fact necessary, for parties to support and oppose motions for summary judgment with affidavits and other discovery materials. We also note that an affidavit attached to an employer's motion for summary judgment may be sufficient to establish that the employer occupied the work site for purposes of meeting the statutory employer test. See *Zizza* at 664, 518 A.2d at 304. In this case, the affidavit clearly adds to and supports Piper's second motion for summary judgment. We also find that there is sufficient additional evidence to support Piper's motion. As discussed above, in his recorded statement, Duane Powlus admits that Piper employees were present at the work site "just like we are." Combining the statements of Duane Powlus and others with the affidavit and other supporting documents of record provides us with a sufficient basis to make a determination in this matter.

We also note that Powlus has failed to produce any evidence to refute the contentions made in the affidavit despite its ability to do so. Powlus employees were present at the work site at all times material to the present matter. If any of the relevant assertions made by Stan Seiple in his affidavit were untrue, we would expect Powlus to produce an affidavit or some other form of evidence to contradict the affidavit. We find it dubious that Powlus has failed to do so. As an aside, we also note that Powlus has failed to offer any basis to question the credibility of Stan Seiple. From the documents produced, it appears that Stan Seiple has no interest in the outcome

of this matter. Thus, we disagree with Powlus' claim that this motion for summary judgment should be denied so that a jury can assess the credibility of Stan Seiple.

In arguing that the evidence of record is sufficient to establish that it occupied the work site, Piper distinguishes *Leibensperger v. W.C.A.B. (Thomas H. Lewis Builders Inc.)*, 813 A.2d 28 (Pa. Commw. 2002), from the present matter. In *Leibensperger*, the court held that, even though the general contractor visited the site daily, took responsibility for the successful completion of the project, urged workers to complete their work in a timely manner and directed workers to remove debris, the contractor was not entitled to the statutory employer defense. See *Leibensperger*, 813 A.2d 28. Piper distinguishes the present matter since the facts of *Leibensperger* confined the court's analysis to whether the contractor controlled the work site. That is, in *Leibensperger* it was clear that the contractor did not occupy the work site since the contractor had no supervisory personnel at the work site. Since the *McDonald* test is disjunctive and can be satisfied by either occupation or control, Piper correctly argues that *Leibensperger* is irrelevant to a determination of whether Piper occupied the work site. Piper cites *Emery v. McCollum*, 725 A.2d 807 (1999), as a more appropriate case for us to consider in determining whether Piper occupied the work site. In *Emery*, the court made the following statement in determining that the general contractor had satisfied the second element of the *McDonald* test:

"The record shows that Bechtel, as general contractor, occupied the property for the purpose of construct-

ing the cogeneration plant and had actual control over the premises. Bechtel had an on-site project superintendent who coordinated the work of the various subcontractors. The deposition testimony of the project superintendent clearly set forth that, while each subcontractor was responsible in its limited area, Bechtel was responsible for overseeing the entire project . . . . Thus, Bechtel met the second *McDonald* element." *Emery*, 725 A.2d at 811. (footnote omitted)

Piper claims that this case is similar to *Emery* in that Piper had a project superintendent present at the work site and was responsible for the overall job. In support of this claim, Piper again cites to the portions of Duane Powlus' recorded statement discussed above. (See exhibit A to Piper's second motion for summary judgment, ll. 80-115.) Piper also notes Stan Seiple's statement that "Piper was responsible for and did complete the project in accordance with the construction schedule set forth in the contract documents." (Exhibit D to Piper's second motion for summary judgment, affidavit of Stan Seiple, at paragraph 5(f).) Stan Seiple also affirms that Piper hired, selected and paid all subcontractors, scheduled the work of all subcontractors, and supervised and inspected the work of all subcontractors. (Exhibit D to Piper's second motion for summary judgment, affidavit of Stan Seiple, at paragraph 5(c), (d) and (e).) Based upon the evidence now before this court, we agree that Piper has satisfactorily proven that it occupied the work site for purposes of its motion for summary judgment.

Initially, we note that in Powlus' brief in opposition to Piper's second motion for summary judgment, Powlus

seems to confuse and/or collapses its analysis concerning whether Piper met the second element of the *McDonald* test. The thrust of Powlus' attack is that Piper failed to show the necessary actual control of the work site. As noted above, element two of the *McDonald* test is disjunctive and can be satisfied by either showing that the general contractor occupied or controlled the work site. Although Powlus acknowledges this point in its brief, Powlus fails to separately address both tests for element two of the *McDonald* test. Powlus simply examines the facts and concludes that Piper did not control the work site. From this conclusion, Powlus further concludes that Piper failed to establish that it occupied and/or controlled the work site.

The only point that Powlus raises that could possibly be construed as refuting Piper's claim that it occupied the work site, is that although Piper had a superintendent at the work site, Piper was involved in other projects at the time. In Michael Porter's deposition, he stated that, "we had lots of different jobs going on at the time." (Deposition of Michael Porter, at p. 35, ll. 2-24.) Inferentially, Powlus argues that Piper did not occupy the work site since it was working on other projects at the time. We disagree.

The evidence of record establishes that Piper had an on-site superintendent present at all phases of construction. Moreover, as noted above, although Powlus employees were at the work site at all times relevant to this matter, Powlus has failed to produce any evidence to refute Piper's claim that Joe Gozikowski was present at the work site at all phases of construction. As discussed

above, Duane Powlus has admitted that Piper employees were present at the work site to the same extent as Powlus employees. Based upon the evidence of record, we find that Piper occupied the work site and is entitled to summary judgment on this point. Although rendered moot, we nonetheless examine whether Piper controlled the work site.

Piper next cites relevant case law to support its claim that it also controlled the work site for purposes of meeting element two of the *McDonald* test. A general contractor was found to control a work site where the contractor had the "responsibility and authority to direct, manage and/or operate the construction project where the injury occurred" and where the general contractor's foreman often sent help to rectify problems arising out of the subcontractor's work even where the subcontractor used its own foreman to oversee the subcontractor's employee's work. *Pastore v. Anjo Construction Co.,* 396 Pa. Super. 58, 578 A.2d 21 (1990). Where a contractor's agent marked the area where excavation work was to be performed and exercised actual supervisory control over the entire job, there was sufficient evidence that the general contractor controlled the premises for purposes of meeting element two of the *McDonald* test. *Colloi v. Philadelphia Electric Co.,* 332 Pa. Super. 284, 481 A.2d 616 (1984). A general contractor has control of a work site when the contract with the owner mandates that the general contractor be responsible for all construction means and methods and the general contractor had an on-site supervisor who coordinated the work being performed at the work site. *Dougherty v. Conduit & Foundation Corp.,* 449 Pa. Super. 405, 674 A.2d 262 (1996).

Piper begins by citing a provision of the Outletter/Piper contract similar to those contained in the above cases. The Outletter/Piper contract makes Piper responsible for the safety of persons and equipment on the job site, as well as making Piper responsible for all work on the project and project site, including work performed by subcontractors. (See *General Conditions of the Contract for Construction,* articles 10.2, 3.3.) The Outletter/Piper contract also obligates Piper to "supervise," "direct," "coordinate" and to be "solely responsible for and have control over construction." See *id.* at article 3.3.1. Thus, we agree that the contract provisions in this matter are similar to those discussed in cases where courts found that the general contractor controlled the work site.

Piper further argues that its presence at the work site and role on the project establish that it controlled the work site. As discussed above, Piper employee Joe Gozikowski oversaw and coordinated the work of the subcontractors. He was also present at the work site during all phases of construction. Piper also notes that it scheduled the work of the subcontractors. In support of this claim, Piper cites the deposition testimony of John Bonacci. John Bonacci testified that he received a call from Joe Gozikowski informing him that the elevator work was complete and to, "come back to the job and get the steel on there." (Deposition of John Bonacci, at p. 57, ll. 11-25, p. 58, ll. 1-4.) Additionally, Stan Seiple also confirms that Piper scheduled the subcontractors' work on the project. (Exhibit D to Piper's second motion for summary judgment, affidavit of Stan Seiple, at paragraph 5(d).) Also, when a problem on the work site arose, a Piper employee was called to rectify the situa-

tion. (Exhibit D to Piper's second motion for summary judgment, affidavit of Stan Seiple, at paragraph 5(p).) Thus, Piper argues that the contractual provisions, as well as its performance of supervisory duties at the work site, establish that it controlled the work site for purposes of its motion for summary judgment.

Powlus contends that the subcontractors were virtually autonomous, and, thus, Piper did not control the work site for purposes of meeting element two of the *McDonald* test. Powlus begins by noting that both Gene and Duane Powlus had supervisory duties at the work site. (Deposition of Duane Powlus, at p. 64, ll. 5-11; deposition of Gene Powlus, at p. 6, ll. 18-23.) Powlus also notes that Keystone had a foreman on the work site who was responsible for running the crews and for job safety. (Deposition of John Bonacci, at p. 38, ll. 2-22.) John Bonacci and/or his foreman were also responsible for checking the scaffolding for safety. (Deposition of John Bonacci, at p. 49, ll. 24-25, p. 50, ll. 1-5.)

According to Powlus, Piper has failed to demonstrate that it controlled access to, or indeed anything about, the Powlus scaffolding.[2] Powlus believes this is significant since the scaffolding was the actual site where plaintiff

---

2. As an aside, Powlus argues that because Piper failed to establish that it controlled the scaffold, its credibility concerning its claim that it controlled the entire work site is undercut. We disagree. For Piper to establish that it controlled the work site, Piper need not make a showing that it micromanaged every aspect of the subcontractors' work. We believe that the evidence of record is sufficient to establish that Piper controlled the work site even without making a specific showing that it exercised actual control over the area where plaintiff was injured.

was injured. Powlus notes that it owned, erected and controlled access to the scaffolding and that Piper never inspected the scaffolding, never gave directions on how to erect the scaffolding, never attempted to or directed others to disassemble or block access to the scaffolding and never directed plaintiff to ascend the scaffold.[3] It is Powlus' position that Piper lacked the authority to direct plaintiff to ascend the scaffolding, and that Piper never directed plaintiff to perform any activity at the work site. Powlus further notes that no one from Piper or Keystone asked permission to access the scaffolding and that Powlus would fix safety problems relating to the scaffolding. (Deposition of Gene Powlus, at p. 22, ll. 19-25, p. 23, ll. 1-13; deposition of Duane Powlus, at p. 97, ll. 9-25, p. 98, ll. 1-9, p. 104, ll. 1-25.) Powlus also contends that it is significant that Piper did not employ anyone qualified to dismantle the towers and/or scaffolding and that Piper did not own the equipment needed to dismantle the towers and/or scaffolding.[4] (Deposition of Duane Powlus, at p. 99, ll. 3-19.)

Powlus contends that the conduct of Piper employees following the accident also indicates that Piper did not

---

3. Powlus ignores Duane Powlus' admission that Powlus would have taken the scaffolding down had Michael Porter requested that it do so. (Deposition of Duane Powlus, at p. 98, ll. 3-6, p. 102, ll. 1-25.) Gene Powlus also indicated that other subcontractors often used Powlus' scaffolding and that there was no reason why they should have been unable to do so. (Deposition of Gene Powlus, at p. 22, ll. 5-25.) Michael Porter also requested that Powlus move some of the planking following the accident. (Deposition of Michael Porter, at p. 36, ll. 15-19.)

4. This contention obviously ignores the fact that Piper employed Powlus, who was qualified to dismantle the scaffolding and owned the necessary tools.

control the work site. Michael Porter testified that although he had authority to direct Powlus to take the scaffolding down, he did not take steps to rope off the scaffolding or make any indications that a dangerous condition existed. Michael Porter testified that, "I just went to Duane and told him."[5] (Deposition of Michael Porter, at p. 36, ll. 5-19.) Thus, according to Piper, Michael Porter's deposition testimony demonstrates that, although Piper may have had authority to control the work site, it never actually exercised such control.

The points raised by Powlus in its brief are insufficient to create an issue of material fact and we find that Piper controlled the work site. The fact that the subcontractors may have employed foremen responsible for safety and supervising work does not defeat Piper's claim that it controlled the work site. See *Pastore v. Anjo Construction Co.,* 396 Pa. Super. 58, 578 A.2d 21 (1990). Powlus' primary claim is that Piper failed to exercise sufficient control over the scaffolding where plaintiff was injured. In support of this claim, Powlus points out that Keystone, not Piper, received three OSHA violations as a result of plaintiff's accident. (Deposition of John Bonacci, at pp. 86, 87 and 91.)

It is often possible for a subcontractor to be primarily responsible for a particular area of a work site, even though the general contractor controls the work site as a whole. See *Emery,* 725 A.2d at 811. This phenomenon is the natural result of delegating work to subcontractors.

---

5. This point again ignores the fact that Michael Porter requested that Powlus move planking following the accident. (Deposition of Michael Porter, at p. 36, ll. 13-19.)

In this case we agree with Piper's claim that it controlled the work site. As noted above, Piper had an on-site supervisor, Joe Gozikowski, who was present during all phases of the construction project. (Exhibit D to Piper's second motion for summary judgment, affidavit of Stan Seiple.) Joe Gozikowski, in fact, oversaw and coordinated the work of the subcontractors. (Exhibit A to Piper's second motion for summary judgment, ll. 80-115; exhibit B to Piper's second motion for summary judgment.) Joe Gozikowski also communicated with the architect regarding the work being performed at the work site. (Exhibit D to Piper's second motion for summary judgment, affidavit of Stan Seiple.) We find the evidence of record concerning Piper's presence at the work site and role on the project, as well as the relevant provisions of the Outletter/Piper contract, are sufficient to establish that Piper controlled the work site. Accordingly, we find that Piper has satisfied element two of the *McDonald* test and that there are no issues of material fact.

Finally, Powlus contends that the doctrine of collateral estoppel, or issue preclusion, precludes Piper from re-litigating the statutory employer defense in light of this court's order dated September 10, 2003. Powlus notes that the four elements necessary to invoke the doctrine of collateral estoppel and/or issue preclusion are: "(1) an identity of issues between the present and former actions; (2) a final judgment on the merits; (3) the party against whom the doctrine is asserted must have been a party, or be in privity with a party, to the prior action; and (4) the party against whom the doctrine is asserted must have been afforded a full and fair opportunity to litigate the issue in question." *Menna v. St. Agnes Medi-*

*cal Center,* 456 Pa. Super. 301, 307, 690 A.2d 299, 302 (1997) (citing *Capobianchi v. BIC Corp.,* 446 Pa. Super. 130, 137-39, 666 A.2d 344, 348 (1995)). It is Powlus' position this matter was fully and fairly litigated following Piper's first motion for summary judgment, and that it cannot be raised in a subsequent motion for summary judgment. We disagree.

In the opinion that Powlus is relying upon, we made the following statement regarding whether Piper satisfied element two of the statutory employer test:

"At this time, we are unable to determine whether Piper occupied or controlled the work site where plaintiff was injured." Order dated September 10, 2003, at p. 7.

From this statement it should be obvious that this court was unable to reach a determination concerning whether Piper met element two of the *McDonald* test. At that time, the evidence before the court was insufficient to make such a finding. Although we were unable to make a determination concerning element two of the *McDonald* test, we purposefully left the matter open for future litigation. Because we left the matter open for future litigation, our earlier opinion does not constitute a "final judgment on the merits." Accordingly, the doctrine of collateral estoppel, or issue preclusion, is inapplicable to this matter.

Powlus next argues that the law of the case doctrine applies and precludes Piper from raising the statutory employer defense. The law of the case doctrine refers to: "a family of rules which embody the concept that a court involved in the later phases of a litigated matter should

not reopen a question decided by another judge of that same court or by a higher court in the earlier phases of the matter." *Commonwealth v. Starr,* 541 Pa. 564, 574, 664 A.2d 1326, 1331 (1995). As with the issue preclusion doctrine, the rationale underlying the law of the case doctrine is the protection of the parties' expectations, the finality of litigation and the promotion of a settled, efficient and streamlined system of justice. *Id.*

Initially, we note that we were unable to uncover any cases dealing with a motion for summary judgment which had previously been denied on the same grounds. However, we note that a trial court may grant a motion for summary judgment on grounds similar to those presented in a preliminary objection that another judge had overruled. *D'Errico v. DeFazio,* 763 A.2d 424 (Pa. Super. 2000). We also note that in *MacKintosh-Hemphill International Inc. v. Gulf & Western Inc.,* 451 Pa. Super. 385, 679 A.2d 1275 (1996), the court found that the trial court did not violate the "law of the case doctrine" by finding that plaintiffs had not expended substantial expenses in preparation of case for trial and that it would thus not be inequitable to enter non pros in favor of defendants, where trial court's earlier opinion expressly left open questions concerning extent of plaintiffs' trial preparation.

Thus, for the same reason discussed above concerning the doctrine of collateral estoppel, or issue preclusion, we find the law of the case doctrine is inapplicable to this matter. Accordingly, we find that Piper is entitled to summary judgment since it has established all elements of the five-part *McDonald* test and there are no issues of material fact.

## ORDER

And now, March 19, 2004, upon consideration of defendants Roy W. Piper Construction's second motion for summary judgment, Piper's motion is hereby granted. We enter judgment in favor of Piper and all claims against Piper are dismissed.