1999 PA Super 26

Stephen H. EMERY and Star Emery, Appellants,

v.

LEAVESLY McCOLLUM and John Rich Co., Inc. and Bechtel Construction, Inc., and Insulated Services Inc., Appellees.

Stephen H. Emery and Star Emery, Appellants,

v.

Pyro Power, Inc. and Gilberton Power Company, Appellees.

Superior Court of Pennsylvania.

Argued Sept. 9, 1998.

Filed Feb. 17, 1999.

Lawerence A. Goldberg, West Chester, for appellants.

Edward E. Knauss, IV, Harrisburg, for appellees.

Before CAVANAUGH, DEL SOLE, JOHNSON, HUDOCK, EAKIN, STEVENS, MUSMANNO, ORIE MELVIN and LALLY–GREEN, JJ.

LALLY–GREEN, J.:

¶ 1 Appellants, Stephen H. Emery and Star Emery, appeal from an order granting summary judgment in favor of Appellees, Bechtel Construction, Inc. ("Bechtel") and Gilberton Power Company ("Gilberton"). We affirm.

¶ 2 The Emerys filed negligence actions against Bechtel and Gilberton, among others.[1] The trial court granted summary judgment in favor of Bechtel on the ground that Bechtel was Stephen Emery's statutory employer. The court held that Gilberton was not liable for the acts or omissions of its general contractor, Bechtel, and granted summary judgment in favor of Gilberton on that basis.

¶ 3 The injury underlying these lawsuits occurred when Stephen Emery, a forklift operator employed by Leavesly–McCollum, was working overtime at a construction site owned by Gilberton. It was dark when Emery completed his work. He ascended a staircase in order to shut off the air compressors at the site. Upon entering the first floor, Emery fell through an opening in the floor and landed on top of the storage tank below. He suffered permanent disabling lower back injuries.

---

1. Summary judgment was granted in favor of Pyro Power, Inc. After a jury trial, a verdict was entered against Insulated Services, Inc. and in favor of the Emerys in the amount of $2,750,000. Neither Pyro Power nor Insulated Services are part of this appeal.

¶ 4   Gilberton, a general partnership, was formed to finance, construct and operate a cogeneration plant and drying facility in West Mahanoy Township, Schuylkill County. Gilberton entered into a contract with Bechtel for construction of the facility. Bechtel contracted with Pyro Power, Inc. ("Pyro Power") for certain work. Pyro Power in turn contracted with Leavesly–McCollum, Emery's employer, to insulate the inside of the boilers at the facility. Gilberton is the owner of the facility and Bechtel is the general contractor.

¶ 5   On appeal, the Emerys raise four issues:

1. Whether a general contractor is liable for injuries suffered by the employee of a sub-subcontractor where the general contractor did not have actual control over the work; and when there was no contractual relationship between the general contractor and the sub-subcontractor?

2. Whether a general contractor is liable for injuries suffered by the employee of a sub-subcontractor when the sub-subcontractor provided workers' compensation benefits?

3. Whether the owner of a construction site is liable for injuries suffered by the employee of a subcontractor when the owner retains control of the job site, is obligated to inspect and supervise all work performed on site, promulgate a safety program for the project and ensure compliance with safety procedures and employs a site manager to supervise and inspect the work, to ensure all contractors comply with safety procedures and to correct hazardous conditions on site.

4. Whether an employer is liable for injuries suffered by the employee of a subcontractor when the employee was working overtime on the job site after dark; the job site was not equipped with artificial lighting; and the employee fell through a floor opening which was unlit, railless and uncovered in contravention of OSHA regulations and the employer's safety program?

¶ 6   In reviewing the grant of summary judgment:

we must view the record in the light most favorable to the non-moving party and determine whether the moving party has established that there exists no genuine issue of material fact and that it is therefore entitled to judgment as a matter of law. *Skipworth v. Lead Industries Assoc.*, 547 Pa. 224, 230, 690 A.2d 169, 171 (1997). The non-moving party is entitled to all reasonable inferences. Any doubts as to the existence of a factual dispute must be resolved in the non-moving party's favor and summary judgment is appropriate only in the clearest of cases. *Kingston Coal Co. v. Felton Mining Co., Inc.*, 456 Pa.Super. 270, 690 A.2d 284, 287 (1997).

*Roman Mosaic & Tile v. Aetna Cas. & Sur.*, 704 A.2d 665, 668 (Pa.Super.1997).

¶ 7   The Emerys first contend that Bechtel is not a statutory employer and, thus, is not immune from liability for negligence. This argument is premised on the definition of statutory employer found in § 203 of the Workers' Compensation Act.[2] A general contractor can only be deemed a statutory employer where the following elements are demonstrated:

1. An employer who is under contract with an owner or one in the position of an owner.

2. Premises occupied by or under the control of such employer.

3. A subcontract made by such employer.

4. Part of the employer's regular business entrusted to such subcontractor.

5. An employee of such subcontractor.

*McDonald v. Levinson Steel Co.*, 302 Pa. 287, 294, 153 A. 424, 426 (1930). The Emerys do

2. Section 203 of the Workers' Compensation Act provides:

An employer who permits the entry upon premises occupied by him or under his control of a laborer or an assistant hired by an employe or contractor, for the performance upon such premises of a part of the employer's regular business entrusted to such employe or contractor, shall be liable to such laborer or assistant in the same manner and to the same extent as to his own employe.

77 P.S. § 52.

not challenge the first, fourth, and fifth elements of this test but argue that Bechtel does not meet either the second or the third element.

¶ 8 The Emerys first argue that Bechtel cannot be a statutory employer because it fails the second **McDonald** element, i.e. Bechtel did not have actual control over the work at the construction site. An employer will satisfy this element of the *McDonald* test **either** if he occupies the premises **or** if he is in control of the premises. *Dougherty v. Conduit & Foundation Corp.*, 449 Pa.Super. 405, 674 A.2d 262, 266 (1996). Although actual control must be demonstrated, *id.*, the statutory employer's control of the premises need not be exclusive of the owner's possession of the premises. *Colloi v. Philadelphia Elec. Co.*, 332 Pa.Super. 284, 481 A.2d 616, 623 (1984). Moreover, the fact that the subcontractor used its own supervisors to directly oversee the subcontractor's employees does not mean the general contractor did not retain actual control over the project and premises in general. *Pastore v. Anjo Construction Co.*, 396 Pa.Super. 58, 578 A.2d 21, 26 (1990).

¶ 9 The record shows that Bechtel, as general contractor, occupied the property for the purpose of constructing the cogeneration plant and had actual control over the premises. Bechtel had an on-site project superintendent who coordinated the work of the various subcontractors. The deposition testimony of the project superintendent clearly set forth that, while each subcontractor was responsible in its limited area, Bechtel was responsible for overseeing the entire project.[3] Thus, Bechtel met the second *McDonald* element.

¶ 10 The Emerys next contend that Bechtel cannot be a statutory employer because it fails the third **McDonald** element, i.e., no contractual relationship existed between Bechtel and Leavesly–McCollum, Emery's employer. Our Supreme Court first addressed the issue of whether a contractual relationship with the general contractor was necessary to trigger statutory employer status in *Qualp v. James Stewart Co.*, 266 Pa. 502, 109 A. 780 (1920). In that case, James Stewart Co. ("Stewart Co.") contracted with Hibbs to perform certain work. Hibbs in turn subcontracted the work to Wolfarth & Greenfield. Qualp, an employee of Wolfarth & Greenfield, died from an injury received during the course of his employment. His widow claimed workers' compensation benefits from Stewart Co., which were allowed. Stewart Co. appealed, arguing it was not Qualp's statutory employer because it did not have a direct contractual relationship with Wolfarth & Greenfield. The Court held that an immediate contractual relationship with the original contractor was not necessary for the original contractor to be considered the statutory employer and, thus, responsible for workers' compensation benefits. *Id.* at 508, 109 A. at 781.

¶ 11 This Court relied on *Qualp* as recently as 1997 in *Lascio v. Belcher Roofing Corp.*, 704 A.2d 642 (Pa.Super.1997). In *Lascio*, the general contractor, Barclay–White, contracted with McKeon for certain work. McKeon then subcontracted the labor portion of that contract to Glass and Metal Erectors, Inc. Samuel Lascio, an employee of Glass and Metal Erectors, was injured while working on the project. After a jury found Barclay–White negligent and returned total verdicts of over $1,000,000, the trial court granted judgment n.o.v., holding that Barclay–White was a statutory employer. This Court affirmed the grant of judgment n.o.v., confirming the principle that an immediate contractual relationship is not required for statutory employer immunity. *Lascio*, 704 A.2d at 644.

¶ 12 This Court has concluded that no statutory employee status exists where no vertical contractual privity exists. *See, e.g., Travaglia v. C.H. Schwertner & Son, Inc.*, 391 Pa.Super. 61, 570 A.2d 513 (1989); *Grant v. Riverside Corp.*, 364 Pa.Super. 593, 528 A.2d 962 (1987). In *Travaglia*, the owner ("PECO") contracted with United Engineers & Constructors ("United") to furnish various

---

**3.** The project superintendent testified, for example, that Bechtel was responsible for the overall safety of the job site, that a Bechtel employee was responsible for making sure that OSHA regulations were followed and monitoring the subcontractors' safety programs, and that a Bechtel supervisor was generally on site if work was being performed. R. 501a, 511a, 514a.

"general contractor" services at various facilities, including PECO's Eddystone power station. PECO then entered into a contract with Schwertner to design and build concrete storage silos at Eddystone. Schwertner subcontracted certain of that work to Providence Steel Company ("Providence"). Travaglia was employed by Providence. After Travaglia was injured, he sued Schwertner, United and Providence for negligence. The trial court granted summary judgment in favor of United, holding that United was Travaglia's statutory employer. This Court reversed, holding that United could not be Travaglia's statutory employer because United was not in the vertical "chain" of contracts from PECO, *i.e.*, there was no vertical privity. *Travaglia*, 570 A.2d at 515.

¶ 13 The *Travaglia* court relied on *Grant* where a similar factual scenario existed. There, Turner Construction Company, the general contractor, made two separate contracts, one with Riverside Corp. ("Riverside") and one with Reiling ("Reiling"). Plaintiff was an employee of Reiling. Riverside sought statutory employer status. This Court found the lack of a vertical relationship between Riverside and Reiling determinative and held that Riverside could not be the plaintiff's statutory employer. *Grant*, 528 A.2d at 966.

¶ 14 As is evident from the above discussion, the determining factor in these cases is whether or not there is a vertical "chain" of contracts. In the *Lascio* line of cases, all of the contracts proceed downwards from the owner, *i.e.*, owner contracts with general contractor, general contractor contracts with subcontractor, subcontractor contracts with sub-subcontractor, and so on. *See McCarthy v. Dan Lepore & Sons Co.*, No. 4582 Philadelphia 1997, slip op. at 7, 1999 WL 11709 (Pa.Super. filed December 22, 1998) (subcontractor is statutory employer of sub-subcontractor's employee because of vertical relationship between general contractor, subcontractor and sub-subcontractor). In the *Travaglia* line of cases, the owner/general contractor contracts separately with each subcontractor so that there is no vertical relationship between the subcontractors.

¶ 15 The present case has the same vertical "chain" of subcontracts as the *Lascio* line of cases. Gilberton, the owner, contracted with Bechtel, the general contractor. Bechtel contracted with Pyro Power, the subcontractor. Pyro Power contracted with Leavesly–McCollum, the sub-subcontractor. Thus, the vertical chain of contractual privity is present and Bechtel is not precluded from statutory employer status on this basis.

¶ 16 The Emerys next contend that Bechtel is not entitled to statutory employer status because Leavesly–McCollum, and not Bechtel, provided workers' compensation benefits. This Court stated in *Lascio*, 704 A.2d 642, that the general contractor can claim statutory employer status even if it has not paid worker's compensation benefits. *Lascio* relied on *Cranshaw Construction v. Ghrist*, 290 Pa.Super. 286, 434 A.2d 756 (1981) in which we held that, because the general contractor remains liable for benefits, albeit only in a reserve status, it is given immunity in exchange for the **potential** liability for workers' compensation benefits, regardless of whether benefits are actually paid or not. *Lascio*, 704 A.2d at 645. Our Supreme Court recently ruled that the 1974 amendments to the Workers' Compensation Act do not change the principle that a general contractor can be a statutory employer even it the subcontractor paid workers' compensation benefits. *Fonner v. Shandon, Inc.*, No. 49 W.D. Appeal Docket 1996, Slip Op. At 9, 1999 WL 21483 (Pa. filed Jan. 21, 1999).

¶ 17 The Emerys argue unsuccessfully that three cases support this claim. First, they argue that *Cox v. Turner Construction Co.*, 373 Pa.Super. 214, 540 A.2d 944 (1988) controls. There this Court held that Turner did not have statutory employer status because there was no subcontract, and not because someone else had paid workers' compensation benefits.

¶ 18 Next, the Emerys rely on *Donaldson v. Commonwealth of Pa., Dept. of Transp.*, 141 Pa.Cmwlth. 474, 596 A.2d 269 (1991). The *Donaldson* court explained that a contractor may be considered a statutory employer under two different sections of the workers' compensation law: 1) under

§ 302(a), a contractor may be considered a statutory employer of employees of a subcontractor if the subcontractor has not secured the payment of worker's compensation benefits and the contractor then paid the benefits, 77 P.S. § 461; or 2) under § 302(b), a contractor can be considered a statutory employer if it meets the *McDonald* test set forth above. 77 P.S. § 462. The *Donaldson* court held the contractor could not be a statutory employer under § 302(a) because it had not paid benefits. *Donaldson*, 596 A.2d at 276. However, the court then addressed whether the contractor could be a statutory employer under § 302(b) under the *McDonald* test. The Court then found that the contractor did not have actual control of the premises and, thus, did not meet all the elements of the *McDonald* test. *Id.*

¶ 19  The Emerys also cite *Weinerman v. City of Philadelphia*, 785 F.Supp. 1174 (E.D.Pa.1992). There, the court refused to grant summary judgment because there was a genuine question of fact as to whether the contractor occupied or exercised actual control over the premises in order to fulfill that element of the *McDonald* test for § 302(b) purposes.

■  ¶ 20  Summarizing, even where § 302(a) does not apply, § 302(b) can apply if the contractor meets the *McDonald* test. The Emerys have failed to cite us a case where a contractor who meets § 302(b) by fulfilling all the elements of the *McDonald* test, loses the status of a statutory employer because it does not also meet the definition set forth in § 302(a). To the contrary, a contractor can be a statutory employer if it meets either the § 302(a) or the § 302(b) requirements. Thus, the Emerys' claim that Bechtel cannot be a statutory employer because it did not pay workers' compensation benefits is without merit.

■  ¶ 21  The Emerys next claim that Gilberton, the owner of the construction site, is independently liable for Stephen Emery's injuries because it retained control over the work and failed to exercise that control with reasonable care.  An owner who is out of possession and without control over the construction site has no duty to the employees of the independent contractor to whom the work and premises were entrusted. *Hader v. Coplay Cement Mfg. Co.*, 410 Pa. 139, 189 A.2d 271 (1963); *Colloi*, 481 A.2d at 619. Frequent visits by employees of the owner to the job site merely evidence the normal desire of an owner to observe the progress of the work and to ascertain that the contractor is doing its work in accordance with the contract and "in no way" indicate that the owner retained control over the contractor's work. *Hader*, 410 Pa. at 154, 189 A.2d at 278. *See also Celender v. Allegheny Co. Sanitary Auth.*, 208 Pa.Super. 390, 222 A.2d 461 (1966) (contract giving the owner the right to observe the fulfillment of safety requirements along with the right to order them fulfilled if the contractor did not do so did not, as a matter of law, constitute such control of the work or premises as to impose liability on the owner); *Brletich v. U.S. Steel Corp.*, 445 Pa. 525, 285 A.2d 133 (1971) (contract giving the owner the right to inspect and approve the work and the ability to take control of the premises from the contractor insufficient to take that case outside the general principle set forth in *Hader*, even where the owner employed engineers or inspectors to make sure the contractor was complying with the terms of the contract.)

¶ 22  The Emerys seek to avoid the *Hader* rule by arguing that Gilberton retained control of the work and negligently exercised that control.  In support of this argument, the Emerys cite to the Partnership Agreement,[4] the Gilberton/Bechtel contract, and the deposition testimony of Bechtel's project superintendent.  They argue that the documents and testimony make it "clear that Gilberton's contractual obligations included assuring compliance with safety procedures on site," and that Gilberton's site manager "was responsible for ensuring compliance by the general contractor and its subcontractors with all contract documents." Appellants' Brief at 27, 29.

---

4.  Gilberton is a Pennsylvania general partnership.  The Partnership Agreement defined the parameters of that partnership.

¶ 23 Here, the Emerys' argument fails in light of *Hader* and its progeny. The record reflects that Gilberton's site manager did not assume control of the premises or of the work; rather, he acted as a liaison between the owner and the contractor. R. 548a. His responsibility was to make sure that the contractor was complying with the contract. *Id.* Thus, in accordance with the principles set forth above, the trial court correctly found Gilberton did not retain control of the work and/or premises, and thus was not independently liable for the injuries.

¶ 24 Finally, the Emerys contend that Gilberton is liable under another exception to the general rule, i.e., the "peculiar risk" or "special danger" exceptions found in sections 416 and 427 of the Restatement (Second) of Torts and adopted in *Philadelphia Electric Co. v. James Julian, Inc.*, 425 Pa. 217, 228 A.2d 669 (1967). These sections provide:

§ 416. Work Dangerous in Absence of Special Precautions

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

§ 427. Negligence as to Danger Inherent in the Work

One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

¶ 25 As set forth in our prior cases, the determination of whether either of these exceptions applies involves a two-fold test: (1) whether the risk is foreseeable to the owner at the time the contract is executed, *i.e.*, would a reasonable person foresee the risk and recognize the need to take special measures; and (2) whether the risk is different from the usual and ordinary risk associated with the general type of work done. *Edwards v. Franklin & Marshall College*, 444 Pa.Super. 1, 663 A.2d 187, 190 (1995); *Ortiz v. Ra–El Development Corp.*, 365 Pa.Super. 48, 528 A.2d 1355, 1358 (1987). Although the determination of whether a particular case presents a special danger or peculiar risk is a mixed question of law and fact, the trial judge may make this determination as a matter of law in clear cases. *Mentzer v. Ognibene*, 408 Pa.Super. 578, 597 A.2d 604, 610 (1991). Moreover, because the "peculiar risk/special danger" doctrines are exceptions to a general rule, they should be viewed narrowly. *Edwards*, 663 A.2d at 190. The risk/danger must be recognizable in advance and contemplated by the owner at the time the contract was formed. *Id.* It must not be a risk/danger "created solely by the contractor's 'collateral negligence,' ... [i.e.,] negligence consisting wholly of the improper manner in which the contractor performs the operative details of the work." *Mentzer*, 597 A.2d at 611.

¶ 26 The Emerys fail to demonstrate their claim under either exception. The record reflects that Emery fell through a hole in a floor which had been created when Bechtel ironworkers, at the request of a subcontractor, removed metal grating in the floor. Neither Bechtel nor the subcontractor marked the opening. The area was unlit and the opening did not have a rail of any sort around it. To fit within the "peculiar risk" or "special danger" exceptions, the court would have to find, first, that it was foreseeable that the grating would have to be removed to access the area below and, second, that the grate would be removed and left unmarked in a negligent manner. As stated above, where the danger is created solely by the contractor's collateral negligence, the exceptions do not apply. The Emerys have failed to demonstrate that Gilberton could have foreseen, at the time of executing the contract with Bechtel, that Bechtel or its subcontractors would perform their work in a negligent manner.

¶ 27 Even assuming foreseeability, the Emerys have failed to demonstrate that the risk was different from the usual and ordinary risk associated with the general type of work done, or that the circumstances surrounding the specific task make it especially dangerous. *See Ortiz*, 528 A.2d at 1358–59. The following cases emphasize the need to demonstrate the unique character of the risk or task. In *Colloi*, 332 Pa.Super. 284, 481 A.2d 616, the employee was digging beneath an electric substation to repair a broken water pipe and struck an electrical conduit. The court held that the circumstances of excavating beneath an electrical substation without ascertaining whether there were power lines in the area to be excavated made the task especially dangerous. *Id.* 481 A.2d at 622–23. In *Edwards*, 444 Pa.Super. 1, 663 A.2d 187, the employee fell through a deteriorating roof while renovating an old building. The court held the deteriorating roof was not a special danger or peculiar risk to an employee of a company that was in the business of renovating buildings. *Id.* 663 A.2d at 191. And, in *Mentzer*, 408 Pa.Super. 578, 597 A.2d 604, a carpenter, who was employed by a building contractor, fell through a hole cut in the floor for an internal stairway. The court held that the existence of a stairwell opening at a two-story building construction site and the risk of falling through such an opening are customary incidents of that type of work and presented nothing unusual that would heighten the risk so as to bring it within the exceptions. *Id.* 597 A.2d at 611

¶ 28 The trial court here relied on *Mentzer* when it held that the lack of any protective devices around the opening in the floor was the result of ordinary negligence of the contractor/subcontractors for which the owner, Gilberton, could not be held liable. As this conclusion is strongly supported by the case law set forth above, and by the record, we hold that trial court did not err in granting summary judgment.

¶ 29 Order affirmed.

