J-A08041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ROBERT P. MAIN, III | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| THE COLUMBIA GAS COMPANY OF | : | No. 1470 WDA 2018 |
| PENNSYLVANIA A SUBSIDIARY OF, | : | |
| NISOURCE INC. | : | |

Appeal from the Order Entered September 14, 2018
In the Court of Common Pleas of Lawrence County Civil Division at
No(s): 11070 of 2015

BEFORE: PANELLA, P.J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED SEPTEMBER 9, 2019**

Robert P. Main, III appeals from the order granting summary judgment in favor of The Columbia Gas Company of Pennsylvania ("Columbia Gas") in this negligence action. Main argues that the court erred in concluding that Columbia Gas was not negligent in bringing methanol to the site where Main was working under Columbia Gas's subcontractor; the court erred in finding that Columbia Gas was not vicariously liable for the subcontractor's negligence, because it did not retain control over the subcontractor; and the court erred in finding Columbia Gas was not vicariously liable under the peculiar risk doctrine. We affirm.

Columbia Gas owns the natural gas lines servicing a residential community in Wampum Borough, Lawrence County. Trial Court Opinion, filed 11/16/18, at 6. The gas lines include a four-inch-wide "main" pipeline, and

smaller "service lines" that branch off to the individual residences. *Id.* at 8. The lines were installed by a subcontractor, The Fishel Company ("Fishel"). By November 25 2013, the lines had become clogged with water and ice, and Columbia contracted with Fishel to clear the main and service lines. *Id.* at 6, 8, 9-10. After the main line and service lines were disconnected, the service lines were cleared using methanol, which helps evaporate water. *Id.* at 10. A Columbia Gas employee brought methanol to the site, for use by Fishel employees, in a bottle with the word "methanol" hand-written on it. *Id.* at 10; Amended Complaint at ¶ 8. Columbia Gas informed the Fishel foreman that methanol was at the site. Tr. Ct. Op. at 10.

Meanwhile, other Fishel employees were using a method referred to as "pigging" to clear the main line. This involved shooting a foam bullet-like plug (known as a "pig") down a portion of the clogged pipe using compressed air. *Id.* at 2, 8. The main line was 500 to 600 feet long, and it would take a pig around 30 seconds to travel through it. *Id.* at 9. Keith Rerko, a Fishel employee, was at the shooting end of the pigging operation. *Id.* Main, also an employee of Fishel, was at the receiving end, and would retrieve the pigs from the ground after they were ejected from the pipe. *Id.* at 8. Rerko and Main remained in communication regarding when the pigs were shot and ejected. *Id.* at 8-9.

Several Columbia Gas employees were present and monitoring Fishel's work. *Id.* at 9-11, 20-21. They made occasional suggestions, such as telling Rerko which type of weld to use on the pipe before firing pigs, and instructed

Rerko to use two pigs at a time. *Id.* at 11. They also told the Fishel employees whether the line was sufficiently clear or more pigging was needed. *Id.* at 9.

At approximately 5:00 p.m., the bottle of methanol was left near the hole where Rerko was shooting the pigs; Rerko cannot recall who left it there. *Id.* at 11. On previous jobs for other employers, Rerko had used methanol to clear water vapor from main gas lines. Rerko Dep. at 81-82. Rerko poured a half-ounce of the methanol into the main line, and then shot air through the line for 15-20 minutes. Tr. Ct. Op. at 11-12. Rerko did not tell anyone he had used methanol in the main line during the pigging operation. *Id.* at 12.

Rerko then resumed shooting pigs, two at a time. *Id.* He did so twice without incident. *Id.* A Columbia Gas employee then advised Rerko to put a rag in between the two pigs to absorb extra water, and Rerko did so.[1] *Id.* After those two pigs were ejected, while Main was retrieving them from the hole, an explosion occurred which severely injured Main's foot and ankle. Amended Complaint at ¶ 26.

Main initiated the instant suit against Columbia Gas by filing a Complaint and a subsequent Amended Complaint. In his Amended Complaint, Main alleged that Columbia Gas negligently brought methanol to the site without training the Fishel employees on its use, warning Fishel of the inherent danger

---

[1] According to Rerko, the Columbia Gas employee "suggested or instructed" that Rerko use two pigs with a balled-up rag between them. Rerko Dep. at 68-69.

of using methanol, or taking other safety precautions. Main alleged that the improper use of methanol caused the explosion which injured Main.

Columbia Gas filed an Answer asserting that none of its own actions or omissions proximately caused Main's injuries. Columbia Gas also argued it did not supervise or direct Fishel's work performed on the gas lines. Columbia Gas included as New Matter that the contract between Columbia Gas and Fishel provided that Fishel was responsible for managing its employees and utilizing safety protocols.[2]

After discovery was conducted, Columbia Gas filed a motion for summary judgment. Main filed a response, arguing, *inter alia*, that the presence of methanol had created a peculiar risk. After argument, the trial court granted summary judgment in favor of Columbia Gas and dismissed Main's Amended Complaint with prejudice. Main filed a petition for reconsideration. The court heard argument and denied the petition.

Main appealed, and raises the following questions:

1. Did the trial court err in ruling as a matter of law that no juror could find that Columbia Gas was separately and independently

---

[2] The contract stated that Fishel "shall exercise the utmost care when the use or storage for explosives or other Hazardous Materials or equipment is necessary for the performance of the Work." General Services Agreement at 11, ¶ 9. The contract also stated that Fishel "shall initiate, maintain, and supervise all safety and health, loss control measures," including any safety programs required and regulations by the Occupational Safety and Health Act ("OSHA")." **Id.** Fishel also assumed responsibility "for the prevention of accidents and for conducting site inspections and enforcing compliance with all safety and health programs." **Id.**

negligent in bringing the methanol to the work site without exercising proper precautions?

2. Did the trial court err in finding that Columbia Gas could not possibly be liable to Main because it hired Team Fishel as an independent contractor to perform the work?

3. Did the trial court err in finding Columbia Gas satisfied its duty to Main by merely informing a Team Fishel supervisor that methanol was on site?

4. Did the trial court err in finding that Columbia Gas did not retain and exercise control over the means and methods of Team Fishel's work so as to impose liability under Restatement (Second) of Torts § 414?

5. Did the trial court err in failing to find that the work performed by Team Fishel was performed under unusually dangerous circumstances so as to involve a special danger or peculiar risk such as to impose liability upon Columbia Gas under Restatement (Second) of Torts §§ 413, 416, and/or 427?

Main's Br. at 4 (suggested answers omitted).[3]

Summary judgment should only be granted "where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law." ***Good v. Frankie & Eddie's Hanover Inn, LLP***, 171 A.3d 792, 795 (Pa.Super. 2017) (quoting ***Hall v. CNX Gas Co., LLC***, 137 A.3d 597, 601 (Pa.Super. 2016)). All facts and reasonable inferences therefrom are to be viewed in the light most favorable to the non-moving party. ***Id.*** We review the grant of summary judgment for an error of law or abuse of discretion. ***Id.***

---

[3] We note that while Main has presented five questions, he has presented his argument in only four sections, in contravention of Pa.R.A.P. 2119(a).

- 5 -

## I. Whether Columbia Gas Was Independently Negligent

In its first three issues, Main argues that Columbia Gas was independently negligent for bringing methanol to the job site without adequately warning Main of its inherent dangers. Main argues that Columbia Gas owed a duty to him, as a business invitee, to protect him against, and warn him of, known and unobvious dangers on the land. Main contends that Columbia Gas breached this duty of care by bringing methanol to the work site without taking certain safety measures, such as warning all Fishel employees as to the dangers of methanol, training Fishel employees as to its proper use, monitoring and controlling the location of the methanol on the job site, and adequately labeling the methanol bottle. Main submits that these actions and inactions by Columbia Gas were a substantial factor in causing his injuries.

To hold a defendant liable for negligence, the plaintiff must prove the following four elements: (1) a legally recognized duty that the defendant conform to a standard of care; (2) the defendant breached that duty; (3) causation between the conduct and the resulting injury; and (4) actual damage to the plaintiff. *Nationwide Mut. Fire Ins. Co. v. Modern Gas*, 143 A.3d 412, 415 (Pa.Super. 2016).

We address only the third element, causation, as we find it dispositive.[4] To prove causation, a plaintiff must demonstrate that the defendant's breach

---

[4] Given our disposition, we need not address the other findings of the trial court on the issue of Columbia Gas's independent negligence.

of duty was both the proximate cause and actual cause of the plaintiff's injury. ***Eckroth v. Pa. Elec., Inc.***, 12 A.3d 422, 427 (Pa.Super. 2010). Although multiple causes may contribute to, and thus qualify as a proximate cause of an injury, ***see Straw v. Fair***, 187 A.3d 966, 995 (Pa.Super. 2018), *appeal denied*, 202 A.3d 49 (Pa. 2019), 202 A.3d 50 (Pa. 2019), *and* 202 A.3d 51 (Pa. 2019), "[p]roximate cause does not exist where the causal chain of events resulting in plaintiff's injury is so remote as to appear highly extraordinary that the conduct could have brought about the harm." ***Lux v. Gerald E. Ort Trucking, Inc.***, 887 A.2d 1281, 1286-87 (Pa.Super. 2005). Rather, an act only qualifies as a proximate cause when it was "a substantial factor in bringing about the plaintiff's harm." ***Eckroth***, 12 A.3d at 428.

Section 433 of the Restatement (Second) of Torts provides the following considerations for a determination of whether an act was a substantial factor in bringing about harm:

> (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
>
> (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible;
>
> (c) lapse of time.

Restatement (Second) of Torts § 433 (1965).[5]

---

[5] The Pennsylvania Supreme Court has cited this section as consistent with Pennsylvania law. ***See Straw***, 187 A.3d at 995.

"Where relevant facts are not in dispute and the remoteness of the causal connection between the negligence of the original actor and the injury is so clear, the issue becomes one of law." **Nationwide Mut. Fire Ins. Co.**, 143 A.3d at 416; **see also Brown v. Phila. Coll. of Osteopathic Med.**, 760 A.2d 863, 868 (Pa.Super. 2000) (stating proximate cause may be determined as a matter of law, and finding defendant's negligence was not a substantial factor under § 433).

Here, the trial court found that summary judgment was appropriate on this issue because the act of Columbia Gas in bringing the methanol to the site was not, as a matter of law, a proximate cause of Main's injuries. Regarding Section 433 clause (a), the number and effect of other factors that contributed to the harm, the court found the action taken by Rerko was a "determinative intervening factor," as "Rerko placed an amount of methanol in the main line, initiated a procedure which he did not consult with anyone on, and never informed anyone he placed methanol in the main line." Tr. Ct. Op. at 26-27. The court stated, "Without Rerko's independent actions, the methanol at the site would not have been introduced to the main line, outside of normal procedures, and based on [Main's] theory of the case, [Main's] injury would not have occurred." **Id.** at 27.

Regarding Section 433 clause (b), the court found that Columbia Gas did not create a force or series of forces that continuously led to Main's injuries. **Id.** at 26. Instead, in the court's view, Columbia Gas created a situation that was harmless until it was independently acted upon by Rerko.

*Id.* The court noted that Columbia Gas brought the methanol to the worksite for the legitimate purpose of its use in the service lines, and there was no evidence that Columbia Gas brought the bottle of methanol to the pigging operation. *Id.* at 25-26. The court also found that under Section 433 clause (c), "the limited amount of time which passed between the conduct at issue and the injury" was insufficient to determine proximate causation. *Id.* at 25.

We agree that Columbia Gas's actions were not a substantial factor in causing Main's injuries, and thus did not constitute proximate cause. *Eckroth*, 12 A.3d at 428. In bringing methanol to the worksite for use on the service lines, Columbia Gas created a harmless situation; it was highly extraordinary that Rerko would have independently poured the methanol, from the bottle labeled with the word "methanol," directly into the main pipeline, in between shooting pigs through that same pipeline. *Lux*, 887 A.2d at 1286-87. As there can be no liability for negligence without the element of causation, ***Nationwide Mut. Fire Ins. Co.***, 143 A.3d at 415, we conclude the trial court did not err in granting summary judgment in favor of Columbia Gas on this issue.

## II. Whether Columbia Gas Retained Control Over Fishel

Main argues that Columbia Gas is vicariously liable for the actions of the Fishel employees, including Rerko, as Columbia Gas retained control over Fishel's work.

Generally, the employer of an independent contractor is not liable for harm caused by the negligence of the contractor or its employees. ***Beil v.***

*Telesis Const., Inc.*, 11 A.3d 456, 466 (Pa. 2011). Some exceptions to this rule exist, including the "retained control" exception set forth in Section 414 of the Restatement (Second) of Torts. *Id.* This section provides as follows:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Rest. (Second) of Torts § 414.

Comment a to § 414 explains that an employer of a contractor is liable under agency theory when it "retains control over the **operative detail** of doing any part of the work." *Id.* at Comment a (emphasis added). Comment c provides further guidance for determining whether the employer retained a sufficient degree of control for the exception to apply. *Beil*, 11 A.3d at 466. It states:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

Rest. (Second) of Torts § 414, Comment c.

Synthesizing these comments, our Supreme Court has stated that the retained control exception can be demonstrated in two ways: (1) evidence of a contractual provision giving the employer "control over the manner, method, and operative details of the work," or (2) evidence that the employer "exercised actual control" "over the manner, methods, means, or operative detail in which the work [was] performed." *Beil*, 11 A.3d at 467, 471. The Court also clarified that the exception does not apply to the retention of "a certain degree of authority over safety issues, such as supervising and enforcing safety requirements." *Id.* at 469. The exception is to be construed narrowly, and the determination may be made as matter of law if the evidence fails to establish that the employer retained a sufficient degree of control. *Id.* at 467.

Main does not argue that the contract evinces that Columbia Gas retained control over the work, but that Columbia Gas exercised actual control. Main argues that Columbia Gas "did not permit Team Fishel to perform the pigging operations as it wanted." Main's Br. at 26. Main relies on only two facts to support this proposition: that Columbia Gas employees instructed Rerko to (1) use a certain type of weld, and (2) place a rag between two pigs. *Id.*

The trial court found that not only did the contract confer Fishel with the responsibility for safety and management of hazardous materials, but "[t]he cumulative evidence, in the light most favorable to [Main], reveals only limited control by Columbia Gas over the manner of work, even if there was extensive

- 11 -

control of what work was performed." Tr. Ct. Op. at 18-19. The court noted that Columbia Gas provided initial instructions to the service line crews, instructed Rerko to use two pigs rather than one, instructed Rerko to use a rag between the two pigs, and instructed Fishel to use a backhoe to catch the pigs if necessary. *Id.* at 21. The trial court also noted Columbia Gas employees verified whether the main line was clear or another shot was necessary, but ultimately found that Columbia Gas did not instruct Fishel on the operative details on how to perform the work. *Id.* at 20.

We agree that, as a matter of law, Main has failed to argue that he presented sufficient evidence to invoke the retained control exception. The evidence he points to does not indicate that Columbia Gas exercised "control over the manner, method, and operative details of the work." Rather, it shows at most that Columbia Gas intermittently exercised its right as employer of a contractor "to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations." Rest. (2nd) of Torts § 414, Comment c; *Beil*, 11 A.3d at 466; *see Hader v. Coplay Cement Mfg. Co.*, 189 A.2d 271, 278-79 (Pa. 1963) (finding that site visitation and technical advice provided by employer did not demonstrate employer retained control). Crucially, Columbia Gas provided no instructions regarding the use of methanol to clear the main line in the midst of the pigging operation, the aspect of Fishel's work that allegedly caused Main's injuries. *See, e.g., Nertavich v. PPL Elec. Utils.*, 100 A.3d 221, 236-37 & n.22 (Pa.Super. 2014) (finding employer not liable

under the retained control exception for retaining control over tagging poles as electrically inactive, where the issuance of the tag did not cause the plaintiff to fall off the poles he was painting), *aff'd*, 124 A.3d 734 (Pa. 2015). We thus conclude that the trial court did not err in granting summary judgment on the issue of retained control.

### III. Whether a Peculiar and Unreasonable Risk Existed

Main's final argument is that Columbia Gas was vicariously liable for Fishel's negligence under Restatement (Second) of Torts §§ 413, 416, and 427, as the work involved a peculiar risk of harm. Main asserts that Columbia Gas created a peculiar and unreasonable risk of physical harm by bringing methanol to the work site without taking special precautions, such as monitoring its use and location, or conducting the fire and explosion hazard assessment required by OSHA regulations.

Main failed to include this issue in his Rule 1925(b) Statement of Errors. Nowhere among the 18 issues and sub-issues included in his Statement does Main mention that the court erred in concluding that Columbia Gas was liable because the work presented a peculiar risk or special danger,[6] or invoke these sections of the Restatement (Second) of Torts. In its 1925(a) opinion, the trial court observed that on appeal Main "drop[ped] the specific arguments around . . . peculiar risk liability," and the court accordingly does not address this

---

[6] These phrases "peculiar risk" and "special danger" as used in the Restatement are interchangeable. ***Mentzer v. Ognibene***, 597 A.2d 604, 610 (Pa. 1991).

- 13 -

issue. Tr. Ct. Op. at 7. We therefore conclude this issue is waived. ***See*** Pa.R.A.P. 1925(b)(4)(vii).

Were it not waived, we would find no relief to be due. Main has offered no evidence to establish that the act of pigging involves a peculiar risk or special danger. Rather, the evidence indicates that the addition of methanol to the pigging operation was not foreseeable, and the risk arose solely due to Rerko's "collateral negligence." ***See Emery v. Leavesly McCollum***, 725 A.2d 807, 814 (Pa.Super. 1999) (stating a peculiar risk must be foreseeable and not "created solely by the contractor's 'collateral negligence,' . . . [*i.e.,*] negligence consisting wholly of the improper manner in which the contractor performs the operative details of the work") (quoting ***Mentzer***, 597 A.2d at 611).

Having found no issue meriting relief, we affirm the order of the trial court granting summary judgment in favor of Columbia Gas.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2019

- 14 -