J-A04009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MANUEL UZHO AND LUIS UZHO | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TOP GUN CONSTRUCTION, INC., TOP GUN ENTERPRISES. LLC FRIEL PLASTERING & STUCCO, INC. | |
| Appellant | No. 638 EDA 2020 |

Appeal from the Order entered December 30, 2019
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 170800537

BEFORE:  STABILE, J., KING, J., and PELLEGRINI, J.*

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 07, 2021**

Manuel Uzho ("Uzho") and Luis Uzho ("Luis") (collectively "Appellants"),

appeal from the December 30, 2019 order[1] entered in the Court of Common

Pleas of Philadelphia County granting summary judgment in favor of

---

* Retired Senior Judge assigned to the Superior Court.

[1] Although the order was signed on December 20, 2019 and was entered on the docket on December 24, 2019, notice of the order was not given until December 30, 2019.  In accordance with Pa.R.C.P. 236, the prothonotary is to give written notice of the entry of an order and note in the docket the giving of the notice.  As this Court recently reiterated in **Carr v. Michuck**, 234 A.3d 797 (Pa. Super. 2020), in the context of an appeal, "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given." **Id.** at 805 (quoting **Frazier v. City of Philadelphia**, 735 A.2d 113, 115 (Pa. 1999)).

Appellees, Top Gun Construction, Inc., and Top Gun Enterprises, LLC (collectively "Top Gun"). Appellants contend the trial court erred in granting summary judgment because Top Gun failed to meet all criteria to be considered a statutory employer as a matter of law. Upon review, we affirm.

As our Supreme Court recently reiterated:

> In reviewing a grant of summary judgment, [an appellate court's] standard of review is de novo and [the] scope of review is plenary. *Pyeritz v. Commonwealth of Pa., State Police Dep't*, 613 Pa. 80, 32 A.3d 687, 692 (2011). A trial court should grant summary judgment only in cases where the record contains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Summers v. Certainteed Corp.*, 606 Pa. 294, 997 A.2d 1152, 1159 (2010). The moving party has the burden to demonstrate the absence of any issue of material fact, and the trial court must evaluate all the facts and make reasonable inferences in a light most favorable to the non-moving party. *Id.* The trial court is further required to resolve any doubts as to the existence of a genuine issue of material fact against the moving party and "may grant summary judgment only where the right to such a judgment is clear and free from doubt." *Toy v. Metro. Life Ins. Co.*, 593 Pa. 20, 928 A.2d 186, 195 (2007). [] An appellate court may reverse a grant of summary judgment only if the trial court erred in its application of the law or abused its discretion. *Id.* at 1159.

*Bourgeois v. Snow Time, Inc.*, 242 A.3d 637, 649-50 (Pa. 2020).

Cognizant of its obligation to "examine the record in a light most favorable to the nonmoving party," Trial Court Opinion, 6/12/20, at 4 (citation omitted), the court summarized the facts and procedural history and as follows:

> On February 25, 2016, Appellants, a father and adult son, were employed by Morning Plastering and Stucco, Inc. (hereinafter "Morning"), as manual laborers on a work site located at 4525 Walnut Street, Philadelphia, Pennsylvania 19139 (hereinafter the

"Project"). Morning was the subcontractor of Friel Plastering & Stucco, Inc. (hereinafter "Friel Plastering"), another company hired as a subcontractor by the general contractor for the Project, Top Gun. Top Gun contracted with Friel Plastering to do stucco work for the Project, including the erection of scaffolding. Friel subsequently entered into a sub-subcontract with Morning to perform the stucco work.

Friel Plastering's employees erected the scaffolding using Friel Plastering's own materials and equipment. Friel was also responsible to make sure the scaffolding was safe once erected. On the day of the accident, [Uzho] arrived at the job site finding the scaffolding already set up.[2] Nobody instructed [Uzho] what to do on the job site that day or where to go before he went on the scaffolding; he went straight to the fifth floor of the scaffolding because that was the floor he always picked to work on. [Luis] was working on the second floor of the scaffolding, transporting cement to his father on the fifth floor through the use of a pulley system. [Uzho] testified that just before he was caused to fall, he observed the scaffolding "moving" and was suddenly caused to crash against the wall of the building before falling to the ground five (5) floors below. As a result of the fall [Uzho] suffered catastrophic injuries and has been left paralyzed from the chest down.

Following the incident, [Uzho] filed a worker's compensation claim against Morning. The Pennsylvania Bureau of Workers' Compensation awarded [Uzho] benefits in the amount of $270 per week. On August 10, 2017, [Appellants] filed a civil complaint against Top Gun, Morning, and Friel Plastering, that was ultimately amended to include allegations of negligence and vicarious liability. [Luis] brought his own claim for negligent infliction of emotional distress. In the Amended Complaint, [Appellants] averred that Top Gun was the general contractor for the Project. In Top Gun's Answer, Top Gun denied the enumerated averments listed exhaustively against it. Despite the general denial to [Appellants'] averments, [Top Gun] admitted that [it was] the general contractor for the Project.

On November 4, 2019, [Top Gun] filed a Motion for Summary Judgment seeking dismissal of any and all claims or cross-claims

_____

[2] The day of the accident was the second day Uzho worked on the project.

against them. [Top Gun] presented several theories as to why they should be dismissed from the action. One such argument was that Top Gun is immune from tort liability under the Workers' Compensation Act by virtue of Top Gun's status as general contractor for the Project. [Appellants] responded to [Top Gun's] Motion arguing, *inter alia*, that due to [Top Gun's] general denial to Paragraph 7 of the Amended Complaint, there were genuine issues of material fact as to the actual status of Top Gun. This court agreed with [Top Gun's] arguments and on December 20, 2019, granted their motion finding that Top Gun was immune from tort liability as the general contractor of the Project. Thereafter, on January 29, 2020, [Appellants] simultaneously reached a settlement with the remaining defendants in the matter and filed the present appeal.

*Id.* at 2-4 (citations to pleadings and references to deposition transcripts attached as exhibits to Motion for Summary Judgment omitted).

Following entry of summary judgment in favor of Top Gun, and entry on the docket of the settlement with the remaining parties, Appellants filed their appeal to this Court. The trial court directed Appellants to file a Rule 1925(b) statement and Appellants complied.[3] The trial court subsequently issued its Rule 1925(a) opinion.

Appellants ask this Court to consider one question:

Whether the trial court erred in entering summary judgment against Appellants where Appellee failed to meet all of the criteria to be considered a statutory employer as a matter of law?

Appellants' Brief at 3. Before considering this issue, we address the assertion by the trial court and by Top Gun that this appeal should be dismissed as

_____

[3] We remind Appellants' counsel of the directive in Pa.R.A.P. 2111(a)(11) and (d) to append a copy of the Rule 1925(b) concise statement to an appellant's brief filed in this Court.

- 4 -

untimely filed. As mentioned above, notice of the trial court's order granting summary judgment in favor of Top Gun was provided to all parties on December 30, 2019. *See* n. 1. However, because the order did not dispose of all claims against all parties, it was not a final order. "It is well settled that the interlocutory orders dismissing various parties piecemeal from a lawsuit may not be appealed until the case is concluded as to the final remaining party and the case is therefore resolved as to all parties and all claims." ***Burkey v. CCX, Inc.*** 106 A.3d 736, 738 (Pa. Super. 2014). ***See also*** Pa.R.A.P. 341(b)(1).

> Moreover, a case may be resolved against the final defendant by other than an order of court, as happens where the case against the sole remaining defendant is discontinued or settled, and a docket entry to the effect that the claim was discontinued or settled may serve to render the prior judgments final and appealable[.]

***Burkey***, 106 A.3d at 739. Here, the case was finally resolved once a settlement with remaining parties was noted on the docket on January 27, 2020. Appellants filed their appeal two days later, on January 29, 2020. Therefore, Appellants' appeal was timely filed.

We now turn to the merits of Appellants' challenge to the grant of summary judgment. As reflected above, Appellants contend the trial court erred in granting summary judgment because Top Gun did not satisfy the criteria for designation as a statutory employer. As a statutory employer, Top Gun would be immune from tort liability under the Workers' Compensation Act.

In ***Patton v. Worthington Associates, Inc.***, 89 A.3d 643 (Pa. 2014), our Supreme Court reinforced the established doctrine of statutory employer immunity, explaining:

> Pursuant to Section 302(b) of the Workers' Compensation Act,[1] 77 P.S. § 462, general contractors bear secondary liability for the payment of workers' compensation benefits to injured workers employed by their subcontractors. ***See McDonald v. Levinson Steel Co.***, 302 Pa. 287, 294–95, 153 A. 424, 426 (1930). In this sense, general contractors have been denominated "statutory employers" relative to workers' compensation liability, although they are not common-law employers of subcontractor employees. ***Id.*** at 292, 153 A. at 425. The Legislature's purpose in imposing this status upon general contractors was remedial, as it wished to ensure payment of workers' compensation benefits in the event of defaults by primarily liable subcontractors.
>
> > [1] Act of June 2, 1915, P.L. 736 (as amended, 77 P.S. §§ 1–1041.1, 2501–2626) (the "WCA" or the "Act").
>
> Concomitant with the treatment of traditional employers, statutory employers under Section 302(b) enjoy a measure of immunity from liability in tort pertaining to work-related injuries for which they bear secondary liability under the Act. ***See*** 77 P.S. § 52 (embodying Section 203 of the Act); ***see also*** 77 P.S. § 481(a) (providing that liability of employers under the WCA serves as an exclusive remedy). This Court has previously determined that this immunity pertains by virtue of statutory-employer status alone, such that it is accorded even where the statutory employer has not been required to make any actual benefit payments. ***See Fonner v. Shandon, Inc.***, 555 Pa. 370, 380, 724 A.2d 903, 907 (1999).

***Id.*** at 645 (citation omitted.

The trial court determined that Top Gun was a general contractor on the project, noting that Appellants averred that fact in their Complaint. Trial Court Opinion, 6/12/20, at 6 (citing Appellants' Amended Complaint [Exhibit "A" to Motion for Summary Judgment] at ¶ 7). While Top Gun generally denied

subsections of Paragraph 7 in its Answer to the Amended Complaint, Top Gun did admit it was the general contractor of the project. *Id.* (citing Top Gun's Answer and New Matter at ¶ 7). "Our appellate court has repeatedly held that averments by a party in the pleadings 'constitute binding judicial admissions, conclusive in their nature insofar as their effect is confined to the case [in] which they are filed.'" *Id.* at 8 (quoting *Steinhouse v. Herman Miller, Inc.*, 661 A.2d 1379, 1382 (Pa. Super. 1995) (additional citations omitted)). Further, in *Sheard v. J.J. Deluca Co., Inc.*, 92 A.2d 68 (Pa. Super. 2014), in which a subcontractor's employee was injured, this court explained, "Under Pennsylvania law, [defendant] is a general contractor. To the extent [plaintiff] attempts to dispute this conclusion on appeal, [plaintiff's] own complaint averred [defendant] undertook construction management responsibilities for the project and was responsible for control of the jobsite. [Plaintiff's] averment demonstrates [defendant's] status as a general contractor." *Id.* at 78.

There is no question as to the status of the parties in the instant case. Friel Plastering & Stucco, Inc., entered into its subcontracting agreement with Top Gun on February 12, 2016, an agreement that required Friel to erect scaffolding for the project and apply wire lath and underlayment to the exterior of the building. Morning Plastering and Stucco, Inc. was a sub-subcontractor to Friel Plastering & Stucco, Inc., under the terms of a Subcontractor Agreement dated February 19, 2016. After Friel completed its

tasks, Morning was to provide the actual plastering and stucco services. Uzho was an employee of Morning. As in **Sheard**, the relationship between Top Gun as the general contractor and Friel as a sub-subcontractor implicates the statutory employer concept relative to employees of the subcontractor—and sub-subcontractor—working on the project, including Uzho. As the trial court concluded, "based on [Appellants'] own admissions and the testimonial record present to this court, Top Gun was the general contractor for the Project located at 4525 Walnut Street and is immune from civil liability by virtue of its status as a statutory employer to both Appellants." Trial Court Opinion, 6/12/20, at 10 (footnote omitted).

Finding no error of law or abuse of discretion in the trial court's grant of summary judgment based on Top Gun's status as a statutory employer, or the immunity it enjoys as a result of that status, we shall not disturb the court's ruling.

Appellants devote the argument in their brief to a challenge of Top Gun's status as a statutory employer. Although we have determined Appellants are not entitled to relief, we shall address Appellants' analysis of the statutory employer issue.

Our Supreme Court established the test for qualifying as a statutory employer in **McDonald**. To create the relation of statutory employer under the Workers' Compensation Act, all of the following elements must be present:

> (1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the

control of such employer.  (3) A subcontract made by such employer.  (4) Part of the employer's regular business intrusted to such subcontractor.  (5) An employee of such subcontractor.

**McDonald**, 153 A. at 426.

Appellants contend the first element is not satisfied because there is no evidence that Top Gun was under contract with the owner of the project, University Realty.  The crux of Appellants' argument is that a copy of the written contract was not produced in discovery, nor was it attached to the motion for summary judgment.  However, during his deposition, Top Gun owner, Ted Lescas, testified that he signed a contract with University Realty—in the format used by the American Institute of Architects—to erect a four-story 40-unit multifamily dwelling for student housing.  Deposition of Theodore Lescas, 3/27/19, at 14-16.  As in **Birt v. Firstenergy Corp.**, 891 A.2d 1281 (Pa. Super. 2006), even in absence of a copy of the written contract specifying parties' respective duties, "there can be no serious question" that University Realty and Top Gun entered into an agreement whereby Top Gun would erect the building.  **Id.** at 1293.  Further, we note that University Realty is identified as the property owner in the subcontract for stucco work between Top Gun and Friel Plastering and Stucco, Inc.  **See** Exhibit "B" to Motion for Summary Judgment.  The first element of the **McDonald** test is established.

Top Gun must next establish that the premises were occupied **or** under its control.  While not dispositive, Appellants erroneously claim that this element requires that the "premises must have been *actually* occupied and

under *actual* control by the general contractor before the Statutory Employer defense may been invoked." Appellants' Brief at 14 (emphasis in original). *McDonald* clearly requires one or the other, not both, as Appellants suggest. In fact, the case cited by Appellants in support of their contention that the general contractor must occupy and control the premises specifically instructs, "An employer will satisfy this element of the *McDonald* test **either** if he occupies the premises **or** if he is in control of the premises." *Emery v. Leavesly McCollum*, 725 A.2d 807, 811 (Pa. Super. 1999) (citation omitted) (emphasis in original).

Appellants offer references to the Lescas deposition in support of their arguments that Top Gun did not "occupy AND control" the premises. However, the cited references are not dispositive. For instance, Appellants contend Top Gun did not have its employees inspect the scaffolding. In *Emery*, this Court observed that "the fact that the subcontractor used its own supervisors to directly oversee the subcontractor's employees does not mean the general contractor did not retain actual control over the project and the premises in general." *Id.* at 811 (citation omitted). Here, Friel—one of the approximately 20 subcontractors on the project[4]—was the subcontractor that erected the scaffolding. Friel employee, Michael Gallagher, conducted the inspection of the scaffolding to ensure it complied with OSHA requirements. *See* Deposition

---

[4] *See* Deposition of Theodore Lescas, 3/27/19, at 99-100.

of Denis Friel, 3/25/19, at 28-35. As in *Emery*, not only did Friel have a representative onsite to oversee the work, but also Top Gun had a trailer on the premises and a project manager/superintendent, Philip Pizzo, who did scheduling and oversaw the entire worksite and subcontractors. *See* Deposition of Philip Pizzo, 3/27/19, at 12-19. Top Gun met the second *McDonald* element.

Appellants contend Top Gun also failed to establish the third *McDonald* element, *i.e.*, a subcontract. The record includes copies of subcontracts between Top Gun and Friel and the sub-subcontract between Friel and Uzho's employer, Morning. *See* Deposition of Denis Friel, 3/25/19, at 35-45, Exhibits 2-4. Top Gun has established the third *McDonald* element.

Appellants next argue that applying stucco was not part of Top Gun's regular business and, therefore, Top Gun has not satisfied the fourth *McDonald* element. Appellants do not develop any argument in this regard, *see* Appellants' Brief at 17, stating simply there was no evidence to demonstrate that "stucco application" was part of Top Gun's "regular business." *Id.* at 17-18. Clearly, stucco application is one aspect of the construction that made up Top Gun's regular business as general contractor. Top Gun met the fourth prong of the *McDonald* test.

Appellants also assert Top Gun failed the fifth element of the *McDonald* test because there was no proof Uzho was an employee of Top Gun's subcontractor. Uzho testified that he worked for Morning. *See* Deposition of

Manuel Uzho, 12/10/18, at 114.  Mike Gallagher from Friel Plastering testified that Friel had a subcontract with Morning for plastering and stucco work.  Friel had subcontracted with Morning on 50 or 60 jobs prior to Uzho's accident, Uzho had worked for Morning on every one of them, and Uzho was probably Morning's "best guy" at the time of the accident.  *See* Deposition of Mike Gallagher, 3/25/19, at 28.  There can be no serious question whether Uzho was an employee of Top Gun's sub-subcontractor.  Top Gun satisfied the fifth *McDonald* element.

Whether under the statutory employer analysis conducted by the trial court based on admissions in the pleadings or under the statutory employer test set forth in *McDonald*, Top Gun was entitled to summary judgment.  Finding no error or law or abuse of discretion in the trial court's grant of summary judgment in favor of Top Gun, we will not disturb its ruling.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 4/7/2021*

- 12 -